**SHERWIN–WILLIAMS COMPANY,**
**Plaintiff–Appellee/Cross–**
**Appellant,**

v.

**INSURANCE COMPANY OF PENN-**
**SYLVANIA, Defendant–Appel-**
**lant/Cross–Appellee.**

Nos. 95–3537, 95–3588.

United States Court of Appeals,
Sixth Circuit.

Jan. 23, 1997.

Paul J. Schumacher, Jr., John B. Robertson, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, John W. Lebold, Cleveland, OH, for Sherwin-Williams Co.

Mark O'Neill, William H. Baughman, Jr., Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, James L. Carroll, Gregg A. Caraway, Mitchell, McNutt, Threadgill, Smith & Sams, Jackson, MS, for Insurance Co of the State of Pennsylvania.

Before: KENNEDY, WELLFORD, and SILER, Circuit Judges.

WELLFORD, Circuit Judge.

Defendant, the Insurance Company of the State of Pennsylvania ("ISOP"), appeals from the district court's declaratory judgment in favor of plaintiff, the Sherwin–Williams Company ("Sherwin"), in this insurance coverage dispute involving losses sustained by Sherwin as a result of civil unrest in the wake of the 1989 United States invasion of Panama. Sherwin cross-appeals the denial of its claims for prejudgment interest and attorney's fees. For the reasons that follow, we conclude that the district court erred in finding coverage for Sherwin's losses. ISOP is a mere secondary insurance carrier, and although we agree with the district court's interpretation of the substantive coverage provisions of the insurance policy, we find that it would be premature under the circumstances in this case for us to hold that Sherwin can appropriately look to ISOP for recovery. Accordingly, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for proceedings consistent with this opinion.

## I. *FACTS*

The following facts are not disputed. On December 15, 1989, the Panamanian National Assembly declared that a state of war existed between the Republic of Panama and the United States. Five days later, American military forces invaded Panama, specifically Panama City, as part of "Operation Just Cause." The hostilities began at approximately 1:00 a.m. on December 20, 1989, and continued, on and off, through December 21, 1989. During the invasion and the days immediately following, civil disorder reigned in Panama City.

Amidst the chaos, Sherwin's plant in Panama City, as well as a number of its retail outlets in the outlying residential areas, were ransacked and partially destroyed by civilian looters between December 22 and December 24.[1] These properties were owned by Sherwin–Williams de Panama, S.A., a wholly-owned subsidiary of Sherwin. As a result of the looting, Sherwin suffered real and personal property damage, as well as substantial business interruption losses.

Sherwin and its subsidiaries are named insureds under an insurance policy issued by ISOP which provides worldwide territorial coverage against all risks of loss and physical damage not specifically excluded. The ISOP policy is a "difference in conditions" ("DIC") policy, however, which indicates that the insured maintains primary coverage under other policies and that the ISOP policy provides coverage only to the extent that a loss is not covered by or exceeds the limits of the primary insurance.[2]

Accordingly, Sherwin maintained a number of primary insurance policies: fixed assets were insured by National Union Fire Insur-

---

1. There is some indication in the record that members of Noriega's "dignity battalions" looted some sections of Panama City pursuant to a "scorched earth" policy of sorts. There is no evidence, however, establishing the scope of this "military action" or suggesting that the losses sustained by Sherwin were attributable to the Panamanian military.

2. Relevant provisions of the insurance policy state:

   *Other Insurance*
   Except for Insurance described by the contributing insurance clause, by the excess insurance clause, or by the underlying insurance clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indi-

   rectly covering the same property against the same perils. This insurer shall be liable for the loss or damage only to the extent of that amount in excess of the amount recoverable from such other insurance.
   *Difference in Conditions Warranty*
   It is a condition of this policy that all primary policies in force at the inception of this policy will be maintained in full force and effect during the term of this policy and any renewals or replacement of such policies will not be more restrictive than the current coverage. The insurance provided by this policy will apply as contributing or excess insurance as respects loss arising from perils insured under such other policies.

ance Company of Pittsburgh; inventory was insured by both National Union Fire Insurance Company of Pittsburgh and Cia. Internacional de Seguros, S.A.; cash was insured by Compania Nacional de Seguros, S.A.; and automobiles and trucks were insured by Compania Nacional de Seguros, S.A.

The ISOP policy consists of three relevant parts: (1) the "war-risk" exclusions in the policy jacket, (2) the "war-risk" exclusions in the manuscript policy, and (3) Endorsement No. 1 ("E1"), which purports to extend coverage for certain of those losses previously excluded. Presumably, the exclusions found in the policy jacket are somewhat broader than those found in the manuscript policy, but Sherwin–Williams concedes that the "Full Waiver" provision in the manuscript policy causes it to supersede any conflicting portion of the jacket policy.[3] Therefore, the present dispute revolves around the interplay between E1 and the war-risk exclusions found in the manuscript policy, and whether this action against ISOP at this juncture is premature in view of pending actions against primary carriers. Those provisions read as follows:

*Perils Excluded*

This policy does not insure:

A. Loss or damage occasioned by or through or in consequence, directly or indirectly, of any of the following occurrences, namely:

    (1) War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), civil war.

    (2) Mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power.

    (3) Acts of terrorism. . . .

    (4) In any action, suit or other proceeding, where the company alleges that reason of the provisions of this condition any loss or damage is not covered by this insurance, the burden of

proving that such loss or damage is covered shall be upon the insured.

*Endorsement No. 1*

1. It is understood and agreed that coverage provided by this policy is extended, for a limit of liability of $5,000,000 per occurrence, to provide coverage for direct physical loss or damage as a result of the following named perils:

    (a) Mutiny, civil commotion assuming the proportions of or amounting to a public uprising, military rising, insurrection, rebellion, revolution, military or usurped power including all happenings which contributed to same event;

    (b) This policy is further extended to include acts of terrorism [sic] committed by a person or person acting on behalf of or in connection with any organization. . . .

2. The limit of liability stated herein is in excess of the policy deductible.

  . . . .

5. All other terms and conditions of the policy to which this Endorsement is attached, remain the same.

Nothing herein contained shall be held to vary, alter, waive or change any of the terms, limits or conditions of the policy, except as herein above set forth.

Following its Panama losses, Sherwin filed claims under its primary insurance policies and the ISOP policy in the amount of approximately $871,000.00. Thereafter, the primary insurers denied coverage either orally or by written letter of denial. Sherwin filed suit against them, but the litigation remains pending. We have received no explanation as to the reason for delay in deciding the nature and extent of primary coverage.

In the meantime, Sherwin also filed a claim with ISOP, which was rejected on January 30, 1991. In ISOP's view, Sherwin's claim was premature per the policy's DIC provision since it would not be clear whether the losses were covered by the primary policies until the resolution of Sher-

---

**3.** The Full Waiver provision states that "[t]he terms and conditions of this are substituted for any part or parts of the policy with which they are or might be at variance."

win's litigation against the primary insurers. Alternatively, ISOP maintained that Sherwin's Panama losses were excluded from coverage under the policy's war-risk exclusion.

## II. PROCEDURAL HISTORY

On February 6, 1991, Sherwin filed a declaratory judgment action, premised on diversity jurisdiction, against ISOP in the United States District for the Northern District of Ohio. 28 U.S.C. §§ 1332(a), 2201. Both parties subsequently filed motions for summary judgment as to coverage. On May 12, 1993, the case was referred to a magistrate judge, who recommended that the district court enter a declaratory judgment in favor of Sherwin. In her view, Sherwin's losses fell within the war-risk exclusion, but were reclaimed and covered by the portion of E1 extending coverage for "civil commotion assuming the proportions of or amounting to a public uprising ... including all happenings which contributed to same event."

On July 7, 1994, the district court accepted the magistrate's recommendation and entered a declaratory judgment in favor Sherwin on the coverage issue. On April 5, 1995, after a bench trial, the district court ruled that, despite the pendency of litigation against the primary insurers, Sherwin's claim against the ISOP policy was not premature because the DIC policy provision required nothing more than a *denial* of primary coverage. Accordingly, the lower court entered a final judgment in favor of Sherwin in the stipulated amount of $725,000.00. The district court subsequently denied Sherwin's requests for prejudgment interest and attorney's fees. This timely appeal and cross-appeal followed.

## III. ISSUES

The parties present the following issues for review: (1) whether the district court correctly determined that Sherwin's claim against the ISOP policy is contractually ripe under the policy's DIC provision; (2) if so, whether the district court correctly concluded that Sherwin's losses are covered under the ISOP policy and E1 endorsement; and (3) if so, whether Sherwin should have been awarded prejudgment interest and/or attorney's fees.

### A. Is It Premature For Sherwin to Seek Recovery From ISOP?

Sherwin does not deny that the policy at issue requires that it maintain primary insurance coverage under other policies and that the primary carriers are generally responsible in the first instance. *See Couch on Insurance 2d,* ¶ 62.91 ("Excess insurance does not come into operation until the damage exceeds the maximum limitation of the primary policy."). Ordinarily, then, one would expect the primary insurance carriers to be called upon first to pay an applicable coverage before a secondary or "gap" insurer is called upon to make payment. Accordingly, ISOP contends that Sherwin's claim for its Panama losses is not covered under the terms of the ISOP policy's DIC provision, which states:

> Subject to all other terms and conditions set forth herein, coverage under this policy is to apply only when the perils and/or definitions and/or conditions set forth herein are broader in meaning or scope than those of specific primary policies. Coverage under this policy shall apply as primary insurance when a peril herein is *not insured* under a specific primary policy.[4]

(Emphasis added). According to ISOP, Sherwin's litigation against the primary insurers and the question of their liability must be resolved before it can be said that those losses are "not insured" or not recoverable within the meaning of the policy. ISOP also notes that a contrary construction would create the anomalous situation in which Sherwin is allowed to assert that its losses *are not* covered by the primary policies for purposes of this lawsuit, while asserting that its losses *are* covered under those policies in its action against the primary insurers. The district

---

4. An "other insurance" provision in the policy stated that "[t]his insurer shall be liable for loss on damage only to the extent of that amount in excess of the amount *recoverable* from such other insurance." (Emphasis added).

court disagreed with ISOP's construction of the policy language, stating:

> The policy does not explicitly describe how the insured may demonstrate that a peril is "not insured" by another policy. The Court was unable to locate any authority on this issue, and the parties have cited none.
>
> ISOP apparently construes the terms "not insured" to mean that the other carriers have denied coverage *and the insured has concluded all efforts to recover from them.* This construction is highly restrictive. It discourages the insured from pursuing its rights under other insurance contracts because as long as the insured continues to assert those rights, it cannot recover its losses from ISOP. Moreover, ISOP's construction of its policy would require the insured to exert an extraordinary effort to preserve its claim against ISOP while litigating the claim against another insurer. Because the notice and proof of loss requirements and the limitations on filing suit are based on the date of loss (not the date when coverage under the other insurance policies is finally determined), ISOP's interpretation of the policy requires the insured to submit its notice and proof of loss to ISOP, file suit to preserve its rights, then stay the litigation pending a determination of its rights under other policies.
>
> Absent a more specific policy provision, the Court concludes that the plain and ordinary meaning of the term "not insured" means that the other insurers have denied coverage under their policy terms and have not actually provided coverage. This construction comports with the basic purpose of a DIC policy to protect the insured against variations in the insurance coverage available from different insurers in different locations. Once the other carriers have denied coverage, there is no reason to expect the claim will ultimately be found to be insured under those policies, through litigation or otherwise. Absent a specific policy requirement that the insured file suit against the alleged primary insurer, or a specific provision stating that ISOP will not provide coverage until any suit by the insured against a primary insurer is concluded, the insured should not be denied the coverage it bargained for solely because it chooses to pursue all of its potential claims against all insurers which may provide coverage.
>
> ISOP contends that this construction of its policy potentially will allow a double recovery by the insured, However, ISOP can assert its contractual rights of subrogation to preclude this result.

(Footnote omitted).

ISOP asserts that the meaning of the policy term "not insured" is clear and thus that the district court erred in construing it to require only a denial of coverage. We agree for several reasons. The district court indicated that to hold that Sherwin must first demonstrate that it is not insured by primary insurance carriers would discourage it "from pursuing its rights under other insurance contracts." We fail to see how this conclusion would follow. Rather, it seems to us that the reverse would more likely be the case: if Sherwin were required to show that it was otherwise "not insured" in order to proceed against the secondary carrier, ISOP, it would be stimulated to seek a ruling on primary insurance coverage promptly. Further, to the extent Sherwin has asserted its rights vigorously against primary insurance carriers, it would not be appropriate to conclude, as stated by the district court, that "it cannot recover its losses from ISOP." If a court were satisfied that Sherwin was legally or practically unable to recover from a listed primary carrier despite diligent efforts, it could then proceed against ISOP.

A requirement placed upon Sherwin to assert its rights first against the primary insurance, if there is coverage, would appear to us to be in accord with the intention of the parties. In *Rhone–Poulenc, Inc. v. International Ins. Co.,* the court stated that under Illinois law "an excess insurer's duty ... does not attach until the insured has *tried and failed* to collect under his primary policies. Until then, the suit against the excess insurer is premature." 71 F.3d 1299, 1302 (7th Cir.1995) (emphasis added); *see also Stargatt v. Fidelity & Casualty Co.,* 67 F.R.D. 689, *aff'd without opinion,* 578 F.2d

1375 (3d Cir.1978) (plaintiff must show that primary insurance has been "exhausted" under Delaware law); *U.S. Fire Ins. Co. v. Charter Financial*, 851 F.2d 957 (7th Cir. 1988) (applying Indiana law); *Fried v. North River Ins. Co.*, 710 F.2d 1022 (4th Cir.1983); *Marine Transit Corp. v. Northwestern Fire & Marine Ins. Co.*, 67 F.2d 544, 547 (2d Cir.1933) (applying New York law); *Gutner v. Switzerland General Ins. Co.*, 32 F.2d 700 (2d Cir.1929); *Zeig v. Mass. Bonding & Ins. Co.*, 23 F.2d 665, 666 (2d Cir.1928). As noted above, however, Sherwin has offered no explanation for the delay in the litigation against its primary carriers.

The district court cites no authority for its legal proposition that "not insured" policy language means, in effect, a mere denial of coverage by other insurance carriers. As a practical matter, we cannot agree with the district court's rationale that once an insurance company has denied coverage, "there is *no* reason to expect the claim will ultimately be found to be insured." Denial of an insurance claim by no means indicates a future successful judicial outcome for the insurer.

■ Further, we see nothing in the ISOP insurance undertaking which purports "to protect the insured against variations in the insurance coverage available" from other insurance carriers as declared by the district court. The ISOP policy purports plainly "not [to] cover to the extent of other insurance," and that "insurance provided by this policy will apply as ... *excess* insurance as respects loss arising from perils insured under such other policies." (Emphasis added). Similarly, we also observe that the "other insurance" provision states that "this insurer shall be liable for loss or damage only to the extent of that amount in excess of the amount *recoverable* from such other insurance." The plain language of this provision, not affected by E1 in this regard, requires that Sherwin demonstrate, before liability is adjudged against ISOP, that recovery of some other insurance benefits is not available from primary insurance. The magistrate judge did not discuss the "other insurance" claim language in her report and recommendation. The district court also did not discuss the "amount recoverable from such other insurance" language of the policy. This is thus an additional basis for remanding—Sherwin must first show that there is no other insurance coverage available to it beyond mere denial by these primary carriers, and whether the proceeds of any such insurance coverage are indeed "recoverable" by it—before ISOP may be rendered liable.

Finally, we also disagree with the district court that Sherwin necessarily, under the doctrine stated above, would be required "to exert an extraordinary effort to preserve its claims against ISOP." It has already exerted the necessary effort to preserve its claim against ISOP by filing proofs of claim and by suing for declaratory and other relief. It needs to assert necessary and diligent efforts against the primary carriers to determine primary insurance coverage and to what extent it can recover.

■ The effect of our ultimate disagreement in all these respects with the district court on whether Sherwin's claim is premature as to ISOP is not to deny that at some time ISOP may be liable. Our decision does not, of course, turn on the fact that Sherwin has already chosen "to pursue all of its potential claims against all insurers." Indeed, our holding that Sherwin's claim against excess carrier ISOP is now premature would mandate that Sherwin simply pursue its claims with all its legal resources against the primary carriers in order to obtain a judicial determination as to whether there actually is, or is not, *primary* coverage, and whether there can be a recovery.

We find none of the other cases cited by Sherwin in its brief dealing with such issues as "competing excess insurance carriers" to be applicable or relevant to these issues before us. Nor are cases cited material that refer to allocation of losses between primary carriers or equally situated carriers. That Sherwin chose to employ a foreign insurance company or companies for primary insurance does not render it unfair for it to "be required to pursue expensive litigation against a foreign insurer in a far away land." We believe that Ohio law, applied to these facts and policies, would adopt the reasoning we have reached with respect to prematurity of the claim for collection of any sum even if the

amount of liability be stipulated, from the excess carrier before effectual pursuit of and determination of coverage claims against primary carriers. On remand, Sherwin is not precluded from a further showing of the unlikelihood of any recovery against a primary carrier in order to demonstrate that it has effectively "exhausted" its primary coverage.

### B. *Liability of ISOP*

Interpreting the policy agreement, including endorsement No. 1, we agree with the reasoning of the district court that ISOP has contracted to provide coverage up to the maximum stipulated amount of Sherwin's loss, provided that Sherwin first exhaust efforts to recover from its primary insurance carriers. Of course, ISOP would be entitled to credit for any such recovery. We adopt the district court's memorandum opinion and order, dated July 7, 1994, granting plaintiff's partial summary judgment as to liability for the stipulated amount of loss in this regard.

Accordingly, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** in order that the district court may determine at the appropriate time whether other primary insurance coverage is available to Sherwin and whether Sherwin may recover or collect thereon if in effect at the pertinent period. Based on our disposition of the case, we reserve the question of proper attorneys' fees and interest.