# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 14-31321

————

IN RE: DEEPWATER HORIZON

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2015

Lyle W. Cayce
Clerk

---

CAMERON INTERNATIONAL CORPORATION,

Plaintiff - Appellant - Cross - Appellee

v.

LIBERTY INSURANCE UNDERWRITERS, INCORPORATED, also known as
Liberty International Underwriters,

Defendant - Appellee - Cross - Appellant

————

Appeals from the United States District Court
for the Eastern District of Louisiana

————

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This is an insurance dispute arising out of the *Deepwater Horizon* oil spill. Liberty Insurance Underwriters, Inc. ("Liberty"), appellee-cross-appellant here, insured Cameron International Corporation ("Cameron"), appellant-cross-appellee here and the manufacturer of the blowout preventer used on *Deepwater Horizon*, for potential losses associated with the blowout preventer. After the spill, Cameron settled with BP, the well owner, and sought the policy benefits from Liberty to help cover the settlement costs. For a

No. 14-31321

number of reasons, Liberty refused to pay, so Cameron sued. The district court granted summary judgment for Cameron on its breach of contract action, granted summary judgment for Liberty on Cameron's claim under the Texas Insurance Code, and denied Cameron's motion for attorney's fees. Both parties appealed.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS,
PURSUANT TO ART. 5, § 3-C OF THE TEXAS CONSTITUTION AND
RULE 58.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE

TO THE SUPREME COURT OF TEXAS AND
THE HONORABLE JUSTICES THEREOF:

I.

This case turns, in part, on a complicated arrangement of indemnification between some of the parties involved in the spill. BP (a nonparty here) owned the Macondo oil well and the lease on the continental shelf. BP contracted with Transocean (also a nonparty here), which owned *Deepwater Horizon,* to drill the well, and to indemnify[1] Transocean for liability associated with drilling. Cameron manufactured and sold Transocean the blowout preventer connecting the rig to the well, and Transocean indemnified Cameron for liability associated with the blowout preventer. In short, Cameron was indemnified by Transocean, which was in turn indemnified by BP.

Cameron did not rely solely on indemnification to protect itself. It created an insurance "tower" of $500 million in coverage by purchasing insurance from

---

[1] BP disputes that it owes Transocean indemnification, and Transocean disputes that it owes Cameron indemnification. Neither BP nor Transocean has been found to owe indemnification. Yet both BP's contract with Transocean and Transocean's contract with Cameron contain clauses that purport to indemnify under some circumstances, and both Cameron and Transocean sought indemnification under those clauses. This opinion thus uses "indemnify" and "indemnification" as shorthand for "included a contractual clause that one party interprets as indemnifying it." But we express no opinion on whether BP or Transocean owes indemnification under those clauses.

No. 14-31321

various insurers. Those insurance policies covered the risk that Cameron would incur liability as the blowout preventer's manufacturer. The first $25 million in losses would be covered by one insurer, the next $25 million in losses would be covered by another, and so forth.[2] Liberty sold Cameron a policy covering the $50 million in losses between the first $100 million and $150 million in losses. In other words, Liberty's $50 million policy was excess of the policies covering the first $100 million in losses, and Cameron obtained other policies that were excess of Liberty's policy.

Like many insurance policies, Liberty's policy incorporated a subrogation clause. That clause provided that if Cameron could recover from a third party some or all of the losses paid under the policy, Cameron would transfer the rights to recover to Liberty, "do nothing after loss to impair these rights," and "help [Liberty] enforce them." For example, if Liberty paid Cameron $50 million for a covered loss, and a third party was potentially liable to Cameron for that same loss, Liberty would assert Cameron's rights against that third party and receive any recovery up to the amount Liberty paid Cameron.

After the spill, thousands of lawsuits were filed against BP, Transocean, Cameron, and others. Cameron sought indemnity (for its potential liability for pollution) from Transocean under the sales contract, and Transocean refused; Cameron thus sued Transocean, and Transocean counterclaimed. Transocean, in turn, sought indemnity from BP under its drilling contract, and BP refused; Transocean and BP thus also sued each other. And BP sued Cameron, claiming that, as the manufacturer of the blowout preventer, Cameron was responsible for the losses that BP incurred.

---

[2] The precise details of the tower vary slightly from this description, but those details are not important here.

3

No. 14-31321

As well as seeking indemnification from Transocean, Cameron notified Liberty after the spill of a potential loss covered by the policy. Initially, Liberty neither rejected nor paid Cameron's claim.

Following extensive litigation, BP and Cameron began to discuss settlement. The parties soon developed a framework for that settlement: BP would indemnify Cameron in exchange for $250 million,[3] but only if Cameron's insurers agreed to waive their subrogation rights and Cameron agreed to waive its indemnification rights against Transocean. Otherwise, BP feared, Cameron's insurers would cover Cameron's settlement costs, then step into Cameron's shoes and sue Transocean for indemnification, which would in turn sue BP for indemnification—for the very $250 million that BP just received. Why, in other words, would BP settle for a payment from Cameron that Cameron would ultimately recoup—albeit in a circuitous fashion—from BP?

Alone among Cameron's insurers, Liberty objected to the settlement and declined to offer its policy limits of $50 million. Liberty did not agree to a settlement that waived its subrogation rights and Cameron's indemnification rights against Transocean, leaving Liberty on the hook for $50 million. Liberty also pointed out another clause in its policy that, in its view, meant that its obligation to pay had not yet been triggered: the Other Insurance Clause. That clause provided that "[i]f other insurance applies to a 'loss' that is also covered by this policy, this policy will apply excess of such other insurance." In turn, the policy defined "other insurance" as "any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities." Liberty argued that because Cameron had not yet exhausted its legal remedies against Transocean, "other insurance"—namely,

---

[3] The parties did not immediately arrive at this number, but that is where they ended up.

4

No. 14-31321

Transocean's indemnification—"applie[d]" to the loss, so Liberty's policy was excess of that other insurance. Cameron disputed this interpretation.

Seeking to assuage Liberty's concerns about subrogation, Cameron and BP inserted additional language into the settlement purportedly preserving Liberty's subrogation rights. Then—despite Liberty's refusal to contribute its policy limits—Cameron went ahead with the settlement, putting up $50 million of its own money in addition to the $200 million its other insurers contributed.

Because Liberty continued to refuse to offer its policy limits, Cameron filed this suit, asserting claims for breach of contract and for violations of the Texas Insurance Code. Liberty moved under Rule 12(c) for judgment on the pleadings, but the district court denied most of that motion. On cross-motions for summary judgment, the district court granted Cameron a $50 million judgment on its breach of contract action. But the district court granted judgment in favor of Liberty on Cameron's Texas Insurance Code claims and, in a later order, denied Cameron's request for attorney's fees incurred in this action.

Cameron appealed the district court's judgment against it on its claim under Chapter 541 of the Texas Insurance Code and on its claim for attorney's fees. Liberty cross-appealed the district court's judgment in favor of Cameron on its breach of contract claim.

## II.

This court reviews de novo the district court's grants of summary judgment. *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 464 (5th Cir. 2006). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties do not dispute that Texas law applies to this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

No. 14-31321

## III.

Liberty contends that the district court erred in granting Cameron's motion for partial summary judgment (and in denying Liberty's cross-motion for partial summary judgment) on its breach of contract claim. First, Liberty argues that Cameron is not entitled to recover under the policy because the Other Insurance Clause makes the policy apply only in excess of Cameron's (unexhausted) indemnity claim against Transocean. Second, Liberty argues that Cameron, not Liberty, breached the policy by impairing Liberty's subrogation rights in the BP settlement. We address each argument in turn.

### a.

To begin with, it is undisputed that the policy covers the loss that Cameron suffered. But Liberty, pointing to the Other Insurance Clause, contends that because Cameron has an indemnification agreement with Transocean, "other insurance" "applies" to that loss. Thus, argues Liberty, Cameron is not yet entitled to coverage because Cameron has not exhausted that indemnification or obtained a judicial determination that it is not entitled to indemnification. Cameron responds that its disputed indemnity claim against Transocean does not "appl[y]" to its loss because Transocean refused Cameron's demands for indemnification. Cameron also argues that its disputed indemnity claim against Transocean does not constitute "other insurance" at all.

To refresh, the Other Insurance Clause provides that "[i]f other insurance applies to a 'loss' that is also covered by this policy, this policy will apply excess of such other insurance." In turn, the policy defines "other insurance" as "any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities." "'Other insurance' clauses are generally designed by insurers to 'avoid an insured's temptation or fraud of over-insuring . . . property or inflicting self-injury.'" *St.*

6

No. 14-31321

*Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 206 (5th Cir. 1996) (quoting *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583, 586 (Tex. 1969)).

Liberty argues that the district court should have interpreted the Other Insurance Clause to read, in effect, that if "other insurance" *potentially* applies to Cameron's loss, Liberty's policy is excess of that insurance. Until a final judicial determination that Transocean does not have to indemnify Cameron, then, Liberty's obligation to pay the policy benefits is not triggered, and thus it could not have breached the contract.

Cameron counters that the district court properly interpreted the Other Insurance Clause to mean that Liberty's policy is excess of other insurance if, but only if, that "other insurance" *actually and presently* applies. Thus, because Transocean refused to indemnify Cameron, Liberty was obligated to pay the policy benefits.

In our view, Cameron's interpretation is reasonable and Liberty's is not. The plain language of the clause supports Cameron's reading. Liberty's policy is excess only if other insurance "applies," present tense. *See Parrot Ice-Drink Prods. Of Am., Ltd. v. K & G Stores, Inc.*, No. 14-09-00008-CV, at \*4, 2010 WL 1236322 (Tex. App.—Houston [14th Dist.] March 30, 2010, no pet.) (mem. op.) (use of present tense in contract establishes "relevant time period"). Liberty's interpretation requires the court to read the word "potentially" into the contract. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) (noting that "courts will not rewrite agreements to insert provisions parties could have included"). Moreover, the clause provides that Liberty's policy being excess of other insurance is conditional on other insurance applying. Liberty reads this to mean that the policy is excess of other insurance until Cameron affirmatively shows that no other insurance exists. *But see Certain Underwriters at Lloyd's of London v. Cardtronics, Inc.*, 438 S.W.3d 779, 781

7

No. 14-31321

(Tex. App.—Houston [1st Dist.] 2014, no pet.) (finding that to interpret clause to impose requirement of conclusive determination before recovery where "explicit statement of such a requirement is wholly absent" would be unreasonable). That reading would transform the Other Insurance Clause from a protection against double-insuring into a clause that makes Liberty's policy a policy of last resort.[4] Given the purpose for which Cameron obtained the policy—specifically, to be the primary insurance for the $100 million-$150 million layer of its insurance tower—the clause cannot bear that weight.

Context also indicates that Cameron's reading is correct. The policy states that it is "excess" to both other insurance and the underlying insurance (the first $100 million in the tower). As to the underlying insurance, however, the policy expressly provides that even if an underlying insurer is unable or refuses to pay, Liberty will not "drop down" in coverage. In other words, no matter what, Liberty's policy is excess to the underlying policies. The Other Insurance Clause contains no such provision; Liberty's policy is excess to other insurance only if other insurance "applies." Liberty thus asks us to read language into the Other Insurance Clause stating that the policy is excess even to "other insurance" that is uncollectible. But we refuse Liberty's invitation to read a provision into the policy, particularly because the policy includes that provision elsewhere in a similar context.

As the district court noted, moreover, under Liberty's reading, Cameron would be better off with no indemnification agreement at all—having both insurance and a disputed indemnity claim would leave Cameron less protected

---

[4] As Cameron points out, this would place Liberty in quite a favorable position. Either Transocean indemnifies Cameron, letting Liberty off the hook, or Transocean refuses to indemnify Cameron and Cameron must pursue costly litigation against Transocean to obtain a final determination. Liberty could thus rightfully refuse to pay for years on end, something in tension—to say the least—with its policy term providing that it will "promptly pay" a covered loss.

than it would be with only insurance. Yet the policy does not specifically reference Cameron's indemnity agreement with Transocean, nor does it require Cameron to maintain any such agreement. *See AMHS Ins. Co. v. Mut. Ins. Co. of Az.*, 258 F.3d 1090, 1097 (9th Cir. 2001) (rejecting argument that "other insurance" clause required insured to exhaust other policy that insured was not required to maintain and that was not mentioned in policy). So because Cameron chose to maintain a potential alternative source of protection for its loss—something Liberty did not require it to do—Cameron would have to litigate with that alternative source before recovering anything from Liberty. *See* 2 Allan D. Windt, Insurance Claims & Disputes § 6:13, at 6-212 (6th ed. 2013) (noting that "[s]uch a result would be manifestly unfair and improper" and that "the insured should not be penalized because the additional insurance the insured happened to obtain proves to be uncollectible"); *cf. Hardware Dealers*, 444 S.W.2d at 586 (explaining that court must interpret competing "other insurance" clauses so that "the insured . . . [does not] have less coverage than if [it] had been protected by only one of the policies"). In short, we do not read the Other Insurance Clause to require that Cameron exhaustively litigate other potential sources of coverage before Liberty's payment obligation is triggered.

Liberty offers several counterarguments, but none convince. First, Liberty points to *Sherwin-Williams Co. v. Insurance Co. of Pennsylvania*, 105 F.3d 258 (6th Cir. 1997), and *Manpower Inc. v. Insurance Co. of Pennsylvania*, 807 F. Supp. 2d 806 (E.D. Wis. 2011), as supporting its argument. But those cases merely explain that an insured must exhaust its primary insurance before seeking coverage from its excess insurer; they do not involve an "other insurance" clause. *See Cardtronics*, 438 S.W.3d at 779-80 (distinguishing *Sherwin-Williams* and *Manpower* on that basis). Second, Liberty argues that the district court erred by finding that the Transocean indemnification

agreement is not "other insurance" at all. The district court found no such thing. The district court explained the principle that when an insured has two policies with competing "other insurance" clauses, those policies should not be construed to leave the insured with less coverage than if the insured had only one policy. Then, while acknowledging that the Other Insurance Clause covered indemnification, the district court simply pointed out that when the competing policy is not even an insurance policy—which it is not—that principle likely applies with even more force. Third, Liberty contends that Cameron's interpretation reads the word "excess" out of the Other Insurance Clause. It does not. Instead, it recognizes that Liberty's policy is excess of other insurance, but only if that other insurance actually applies; if other insurance does actually apply, the Other Insurance Clause preserves Liberty's right to sue that other insurer for contribution. Fourth, Liberty asserts that under Cameron's interpretation, Cameron would never need to attempt to enforce its indemnification agreement. That, however, ignores Liberty's subrogation rights: If Cameron refuses to seek indemnification, Liberty can pay the policy and then itself sue Transocean for indemnification.

For all these reasons, we hold that Cameron's interpretation of the Other Insurance Clause is reasonable and that Liberty's is unreasonable; thus, the Other Insurance Clause did not permit Liberty to withhold the policy benefits.[5]

b.

The above holding regarding the Other Insurance Clause does not end the matter. That is because Liberty argues that even if Cameron's interpretation of the Other Insurance Clause is correct, Cameron forfeited its right to coverage by breaching the policy's subrogation clause in settling with

---

[5] Because we conclude that Liberty's interpretation is unreasonable, we do not reach the question whether the doctrine of *contra proferentem* applies.

BP. But because Liberty breached the contract by wrongfully denying coverage, thereby waiving its rights under the subrogation clause before Cameron settled, we do not reach whether Cameron's settlement violated the subrogation clause.

Our conclusion that Liberty breached the contract follows from our holding that Liberty's interpretation of the Other Insurance Clause was erroneous. The district court found that Liberty breached the policy before the settlement by wrongfully constructively denying Cameron's claim and by violating the policy's requirement that Liberty "promptly pay" Cameron's claim.[6] Before Cameron and BP settled, Liberty sent Cameron a series of letters in which it "decline[d] to offer its policy limits" and asserted that the "policy has not yet attached to this loss" because of Liberty's interpretation of the Other Insurance Clause. But as discussed, Liberty's interpretation of the Other Insurance Clause was erroneous, the loss was covered, and the policy had attached. Liberty was required to "promptly pay" Cameron the policy benefits—and it did not.[7] Instead, it wrongfully refused to pay Cameron unless and until Cameron obtained—after what would have been extensive litigation—a final determination that Transocean did not owe it indemnification. Because Liberty breached the policy by wrongfully denying coverage under the Other Insurance Clause, it waived its subrogation rights. *See* 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance §§ 224:148, 224:152 (3d ed. 2005); c*f. Scottsdale Ins. Co. v. Knox Park Constr., Inc.*, 488 F.3d 680, 688 (5th Cir. 2007) (holding that insurer who refused coverage based on erroneous interpretation of policy waived consent-to-settle provision).

---

[6] The district court also found that Liberty breached the contract by refusing a reasonable settlement. Because we hold that Liberty breached the contract by constructively denying the claim, we do not address that issue.

[7] Liberty's argument that it did not "refus[e] to ever pay" is thus irrelevant. Liberty had to pay promptly.

No. 14-31321

We thus agree with the district court that Liberty breached the contract, before Cameron settled with BP, by constructively denying coverage and by violating the policy's "prompt payment" requirement. Because Liberty breached the contract, it waived its rights under the subrogation clause. Thus, even if Cameron violated that clause in its settlement with BP—a question that we do not reach—Liberty breached first.

IV.

Cameron argues that the district court erred in dismissing its claim under Texas Insurance Code Chapter 541. Chapter 541 authorizes policyholders to file private actions against insurers in order to recover "actual damages" caused by an insurer's "unfair method of competition or an unfair or deceptive act or practice in the business of insurance," and permits treble damages in certain circumstances. Tex. Ins. Code Ann. §§ 541.151, 541.003. Cameron alleged that Liberty violated Chapter 541 by wrongfully denying its claim under the policy. As actual damages, Cameron claimed only the policy benefits that Liberty denied and its attorney's fees related to this action.

Liberty argued below that under this court's decision in *Great American Insurance Co. v. AFS/IBEX Financial Services, Inc.*, to maintain a Chapter 541 claim, Cameron was required to assert some injury other than the policy benefits and attorney's fees. 612 F.3d 800, 808 & n.1 (5th Cir. 2010). Cameron countered that the district court should have instead applied the Supreme Court of Texas's decision in *Vail v. Texas Farm Bureau Mutual Insurance Co.*, 754 S.W.2d 129 (Tex. 1988). There, the Supreme Court of Texas held that an insured who is wrongfully denied policy benefits *need not* show any injury independent from the denied policy benefits. 754 S.W.2d at 136. The district court agreed with Cameron that, under Texas law, Cameron need not assert any injury independent from the policy benefits as actual damages. Even so, the district court held that it was bound by this court's language to the contrary

No. 14-31321

in *Great American* and granted judgment for Liberty on Cameron's Chapter 541 claim.

Cameron argues on appeal that *Vail* is still good law in Texas—a proposition with which the district court agreed—and that *Great American* is an incorrect description of Texas law.[8] Liberty counters that the Supreme Court of Texas has sub silentio overruled *Vail*.

Because this issue turns on an important question of Texas state law, and because subsequent decisions from the Supreme Court of Texas and Texas's intermediate appellate courts arguably cast doubt on *Vail*'s continued vitality, we certify the question to the Supreme Court of Texas. *See* Tex. Const. art. V, § 3–c(a); Tex. R. App. P. 58.1. "The decision of whether to certify a question lies within our sound discretion." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 487 (5th Cir. 2003) (citation omitted). We do not "lightly abdicate our mandate to decide issues of state law when sitting in diversity." *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997). But certification "may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed." *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (citation and internal quotation marks omitted).

The question here involves an important state interest—namely, the availability of a cause of action under the Texas Insurance Code where the insurer wrongfully denied the policy benefits but caused the insured no damages other than those denied benefits. Had this issue arisen immediately following *Vail*, there likely would have been "controlling [Texas] Supreme Court precedent" counseling against certification. Tex. R. App. P. 58.1; *see Vail*,

---

[8] Cameron acknowledges that this panel is bound by prior panel decisions, but argues that the language in *Great American* on which the district court relied is non-binding dicta.

No. 14-31321

754 S.W.2d at 136. But in *Great American*, this court interpreted a more recent case from the Supreme Court of Texas, *Provident American Insurance Co. v. Castañeda*, 988 S.W.2d 189, 198-99 (Tex. 1998), as setting out the opposite rule from that in *Vail*.[9] 612 F.3d at 808 & n.1. And since we decided *Great American*, the Supreme Court of Texas has not addressed the issue—although some recent decisions from Texas intermediate appellate courts indicate that (contrary to the view we expressed in *Great American*) *Vail*, not *Castañeda*, governs the issue. *See United Nat'l Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 11 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) *reh'g overruled* (Oct. 7, 2014), *rev. dismissed* (Mar. 27, 2015) (explicitly rejecting insurer's independent-injury argument, citing *Vail* and distinguishing *Castañeda*); *USAA Tex. Lloyd's Co. v. Menchaca*, No. 13-13-00046-CV, 2014 WL 3804602, at *9 (Tex. App.—Corpus Christi, July 31, 2014, pet. filed) (mem. op.) (approvingly quoting *Vail*'s holding that independent injury is not required). Rather than second-guess our reading of current Texas law, we find it prudent to obtain clarity from Texas itself. The parties' arguments regarding whether *Vail* remains good law "illuminate the magnitude and wide ramifications . . . for insurance law" that this issue presents. *In re Deepwater Horizon*, 728 F.3d 491, 500 (5th Cir. 2013), *certified question answered*, No. 13-0670, 2015 WL 674744 (Tex. Feb. 13, 2015), *reh'g withdrawn* (May 29, 2015). We thus conclude that certification is appropriate here.

---

[9] Even before we decided *Great American*, some Texas intermediate appellate courts similarly had interpreted *Castañeda* as requiring an independent injury. *See, e.g.*, *Laird v. CMI Lloyds*, 261 S.W.3d 322, 328 (Tex. App.—Texarkana, 2008, no pet.) ("An insured is not entitled to recover extra-contractual damages unless the complained-of actions or omissions cause injury independent of the injury resulting from a wrongful denial of policy benefits."); *United Servs. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App.—San Antonio, 2002, no pet.) *reh'g overruled* (March 12, 2003) (same).

No. 14-31321

V.

Cameron argues that the district court abused its discretion in denying its motion for attorney's fees. After the district court granted Cameron's motion for summary judgment and awarded Cameron $50 million plus interest, Cameron moved for attorney's fees under Federal Rule of Civil Procedure 54(d)(2). The district court denied that motion, holding that Cameron "impliedly waived" its claim for attorney's fees.[10]

In the district court's view, by the time Cameron moved for attorney's fees, the district court "twice ha[d] considered and dismissed Cameron's theories regarding attorney's fees." Thus, because the district court had "already expended considerable time and effort to resolve [the parties'] dispute, which has included two claims for attorneys' fees," and because the dispute "represents only a fraction of a percent of this massive and very active multidistrict litigation" (MDL 2179, *In re Deepwater Horizon*), the district court was "simply not inclined to hear a third theory concerning [Liberty's] purported liability for attorneys's [sic] fees when that theory could have been presented before the Court issued the" judgment for Cameron. Put another way, the district court found that Cameron should have included its request for attorney's fees in its summary judgment briefing.

Cameron, however, did not waive its claim for attorney's fees, impliedly or otherwise. To impliedly waive its claim, Cameron must have, through some "act from which an intention to waive may be inferred or from which waiver follows as a legal result," misled Liberty to its prejudice "into the honest belief

---

[10] The district court acknowledged in its summary judgment order that, under Texas law, Cameron would be entitled to recover reasonable attorney's fees absent waiver, a point which Liberty does not dispute. Indeed, because Cameron prevailed on its breach of contract claim, the "award of reasonable fees is mandatory." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002); *see Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) (same).

15

that such waiver was intended or consented to." *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 947 (5th Cir. 1983). Cameron requested fees in its amended complaint and moved for fees within fourteen days after the district court entered judgment as required by Rule 54(d)(2). Liberty responds that, having raised claims for attorney's fees during summary judgment, Cameron was required to present all such claims at that time. Despite Liberty's argument, though, Cameron did not present a *substantive claim for attorney's fees incurred in this litigation* during summary judgment. That much is revealed by examining the context in which Cameron discussed its "two claims for attorneys' fees."

First, as discussed above, Liberty moved for summary judgment on Cameron's claim for recovery under Chapter 541 of the Texas Insurance Code, arguing that Cameron had not suffered any "actual damages." Cameron responded that its actual damages were the withheld policy benefits and its attorney's fees in litigating this action. After rejecting Cameron's argument that the withheld policy benefits constituted actual damages, the district court also rejected Cameron's argument that its attorney's fees—standing alone—could constitute actual damages, and granted judgment for Liberty on Cameron's Chapter 541 claim. The district court did not, however, address Cameron's entitlement to attorney's fees incurred in this litigation other than to note that Texas law provides that a prevailing party in a breach of contract action may recover reasonable attorney's fees.

Second, both parties moved for summary judgment on Cameron's claim that, under the policy, Liberty had to reimburse Cameron for its attorney's fees related to the underlying MDL proceedings—proceedings distinct from this litigation. The district court granted summary judgment for Liberty, finding that it did not have to reimburse Cameron for those fees. Put differently, the district court denied one of Cameron's *substantive claims for relief* in this

litigation; again, it did not address Cameron's entitlement to attorney's fees incurred in *this* litigation.

To sum up, Cameron did not present a claim for attorney's fees incurred in this litigation on either purported "claim"—and the issue was certainly not "squarely presented," as Liberty contends. None of Cameron's arguments during summary judgment regarded its entitlement to attorney's fees incurred in this litigation. Nor did the district court reject any claim for attorney's fees incurred in this litigation—indeed, the district court acknowledged that Texas law provides for recovery of attorney's fees in cases like this. Because Cameron did not present any claim for attorney's fees incurred in this litigation until it filed its motion for attorney's fees, Cameron did not waive that claim.

Liberty counters that whether Cameron waived its right to attorney's fees is a procedural issue governed by federal law.[11] But this argument is both meritless and irrelevant.[12] Liberty contends that, under federal law, because Cameron discussed attorney's fees during summary judgment, but did not raise the present argument regarding attorney's fees, that argument is waived. *See Brady Nat'l Bank v. Gulf Ins. Co.*, 94 F. App'x 197, 205 (5th Cir. 2004) (holding that federal law applies to bar party from presenting argument on appeal where party did not present argument below); *see also Kiewit E. Co. v. L & R Constr. Co.*, 44 F.3d 1194, 1203-04 (3d Cir. 1995) (holding that where plaintiff raised argument for recovery of attorney's fees from one defendant during summary judgment, alternative argument for recovery of attorney's fees from another defendant raised for first time after trial was waived). But as discussed, Cameron did not present a claim for attorney's fees incurred

---

[11] Liberty also argues that Cameron waived its claim for attorney's fees because it did not include a request for attorney's fees in its complaint or amended complaint. But Cameron *did* request attorney's fees in its amended complaint.

[12] The district court did not mention which standard of waiver it was applying.

during this litigation during summary judgment and then present a new argument regarding that claim in its later motion for attorney's fees, as in *Brady* and *Kiewit*. Instead, Cameron merely discussed attorney's fees in the context of arguments regarding other issues unrelated to its entitlement to attorney's fees incurred in this litigation. So the federal waiver rule that Liberty cites both does not apply (because the question is whether Cameron waived a claim, not an argument) and is irrelevant (because Cameron never presented any claim for attorney's fees incurred in this litigation during summary judgment).

In sum, Cameron did not waive, impliedly or otherwise, its claim for attorney's fees incurred in this litigation. And as Cameron points out, moving for attorney's fees during summary judgment would have been premature: Cameron did not know whether it would prevail, let alone on which claims it would prevail. *See, e.g.*, *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 313 n.5 (5th Cir. 2010) (attorney's fees request premature where entitlement to recovery was unresolved); *see also* Fed. R. Civ. P. 54(d)(2)(B)(i) (requiring fee motions to be filed "no later than 14 days after the entry of judgment"). Under Texas law, prevailing on the merits is an essential element for recovering attorney's fees, so a motion for attorney's fees before the merits had been resolved would necessarily have failed. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995). Because Cameron did not impliedly waive its claim for attorney's fees, the district court abused its discretion in denying Cameron's motion.

## VI.

For the reasons described above, we AFFIRM the district court's grant of summary judgment for Cameron on its breach of contract claim. We REVERSE the district court's denial of Cameron's motion for attorney's fees

No. 14-31321

and REMAND for a determination of the proper amount of those fees.  And we certify the following question to the Supreme Court of Texas:

> Whether, to maintain a cause of action under Chapter 541 of the Texas Insurance Code against an insurer that wrongfully withheld policy benefits, an insured must allege and prove an injury independent from the denied policy benefits?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified.