# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20527

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2018

Lyle W. Cayce
Clerk

ASSOCIATED MACHINE TOOL TECHNOLOGIES,

Plaintiff - Appellant

v.

DOOSAN INFRACORE AMERICA, INCORPORATED; ELLISON
TECHNOLOGIES, INCORPORATED,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2755

Before KING, SOUTHWICK, and HO, Circuit Judges.

PER CURIAM:*

In dismissing the plaintiff's claims, the district court held that the Texas Dealers Act does not apply retroactively to the parties' contractual agreement. The decision raises a determinative question of state law that has not been fully answered by Texas courts. We conclude that we should certify the question to the Texas Supreme Court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20527

## FACTUAL AND PROCEDURAL BACKGROUND

Associated Machine Tool Technologies ("AmTTech") is a machine tool dealer in Texas and is "primarily engaged in the business of selling and servicing machine tools to end users of the equipment." Doosan Infracore of America, Incorporated, manufactures machine tools and distributes them to various dealers throughout the United States. AmTTech was previously Doosan's dealer in Texas and sold Doosan's metal cutting equipment. AmTTech and Doosan's business relationship started in 1991. Since then, they have had several contracts. The most recent agreement, which is the subject of this litigation, was executed in February 2009. As relevant here, the contract's termination provision states:

> Either party may terminate this [contract], at any time for any reason whatsoever, by giving the other party at least 30 days prior written notice sent electronically or by any delivery service company. Termination of this [contract] by either party does not release [Doosan] or vi[ce] versa from any financial obligation.

The contract was open-ended in that it did not specify a fixed duration.

On August 21, 2015, Doosan sent a letter to inform AmTTech that it decided to terminate their agreement effective October 20, 2015. In the letter, Doosan stated that a modification of its business model "through a realignment and consolidation of its distributor territories and network" had prompted its decision. Though Doosan did not state who AmTTech's replacement would be, AmTTech learned that Doosan had reassigned its distribution rights in Texas to Ellison Technologies, Incorporated. On September 10, AmTTech sued Doosan and Ellison in Texas state court.[1] AmTTech sued Doosan for breach of contract, civil conspiracy, violations of the Texas Deceptive Trade Practices Act

---

[1] AmTTech originally also sued other Doosan entities as well as Mitsui & Co., Ltd., and Mitsui & Co., (USA), Inc. Later, AmTTech's claims against these additional defendants were dismissed by joint stipulation.

2

No. 17-20527

("DTPA"), and violations of the Texas Fair Practices of Equipment Manufacturers, Distributors, Wholesalers, and Dealers Act ("Texas Dealers Act" or "Act") for unlawful termination without good cause and a substantial change of the dealer agreement. AmTTech brought claims for civil conspiracy and tortious interference with an existing contract against Ellison.

After timely removing this action to federal court, Doosan answered and counterclaimed, seeking a declaratory judgment that its notice to terminate was enforceable and that the Texas Dealers Act did not apply to the contract. AmTTech then sought a preliminary injunction to prevent the termination of the contract, which the district court denied. The district court concluded that the Texas Dealers Act did not apply retroactively to the contract.

Subsequently, AmTTech filed a motion for certification and entry of final judgment as to the claims related to the Texas Dealers Act, which the district court also denied. The next month, Doosan and Ellison moved for judgment on the pleadings. In April 2017, the district court granted the defendants' motions but noted that Doosan's counterclaim was still pending. The parties filed a joint stipulation of dismissal as to the counterclaim, which the district court accepted and then upon request entered a final judgment. AmTTech timely appealed.

DISCUSSION

The issues on this appeal are whether the Texas Dealers Act applies retroactively to the parties' agreement and, if so, does it violate the Texas Constitution. The Act went into effect on September 1, 2011. TEX. BUS. & COM. CODE § 57.001. The Act applies to "(1) a dealer agreement entered into or renewed on or after the effective date of this Act; and (2) a dealer agreement that was entered into before the effective date of this Act, has no expiration date, and is a continuing contract." Act of June 17, 2011, ch. 1039, 2011 Tex.

Sess. Law Serv. § 4(a).  The bill that was passed states that "[a] dealer agreement entered into before the effective date of this Act, other than a dealer agreement described by [the aforementioned (2)], is governed by the law as it existed on the date the agreement was entered into, and the former law is continued in effect for that purpose."  *Id.* § 4(b).

The Act also states that "[n]o supplier may terminate a dealer agreement without good cause."  TEX. BUS. & COM. CODE § 57.202.  "'Terminate' or 'termination' means to terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealer agreement."  *Id.* § 57.002(21).  "'[G]ood cause' [generally] means failure by a dealer to comply with requirements imposed on the dealer by the dealer agreement if the requirements are not different from those requirements imposed on other similarly situated dealers."  *Id.* § 57.203(a).  According to the Act, "a supplier shall provide a dealer with at least 90 days' written notice of termination."  *Id.* § 57.204(a).  That notice "must state all reasons constituting good cause for the termination" and provide a 60-day cure period.  *Id.*  The Act allows for the grant of "injunctive relief for unlawful termination."  *Id.* § 57.401(a).

The relevant state constitutional provision provides: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."  TEX. CONST. art. I, § 16.

The district court concluded "that the Act cannot apply retroactively" to the parties' agreement.  The district court held that if the Act applied it would retroactively affect the parties' agreement by impairing Doosan's right to terminate the contract according to its terms, a right that vested prior to the enactment of the Act.  It also determined that, under Texas caselaw, the application of the Act was unconstitutional under the retroactive clause of the Texas Constitution.

No. 17-20527

AmTTech denies that the Act is being applied retroactively, arguing that termination did not occur until 2015, after the Act's 2011 effective date. According to AmTTech, a law is applied retroactively if it adds new legal consequences to events that occurred prior to the date of a law's enactment. Here, the argument is that because the contract had no stated expiration date it was, in effect, a series of 30-day contracts. Thus, the Act added legal consequences to the post-enactment event of termination of the latest 30-day contract, meaning there was no retroactivity.

Doosan responds that the Act as applied to the parties' contract has a retroactive effect by destroying Doosan's right to terminate the contract at will and giving AmTTech a property-like tenure that it did not have under the contract. It further contends that a continuing contract is not a series of discrete 30-day contracts, and there is no Texas authority for such an argument. It also asserts that the cases AmTTech cites are inapposite, and no caselaw suggests that applying a statute to a continuing contract is not retroactive.

If the Act as applied is retroactive, the next question is whether the Act is constitutional. The Texas Supreme Court has held that "the constitutional prohibition against retroactive laws does not insulate every vested right from impairment, nor does it give way to every reasonable exercise of the Legislature's police power; it protects settled expectations . . . and prevents the abuses of legislative power." *Robinson v. Crown Cork & Seal Co.,* 335 S.W.3d 126, 145 (Tex. 2010). The Texas high court identified three factors to consider when deciding if a retroactive statute is constitutional: (1) "the nature of the prior right impaired by the statute"; (2) "the extent of the impairment"; and (3) "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings." *Id.*

5

No. 17-20527

We conclude that the various arguments presented by the parties to us on this appeal leave the issue of retroactivity unsettled under Texas law. We may, and often do, certify an unsettled question of state law to a state's highest court when that court has a procedure allowing us to do so. Texas has its rule in the state constitution: "The supreme court and the court of criminal appeals have jurisdiction to answer questions of state law certified from a federal appellate court." TEX. CONST. art. V, § 3–c(a). The Texas Supreme Court "may answer questions of law certified to it . . . if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent." TEX. R. APP. P. 58.1.

We are exercising discretionary authority when we decide to certify a question to a state's highest court. *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015). We have at times, but not invariably, applied certain factors in deciding whether to certify: (1) the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant; and (3) practical limitations. *See Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1976). We conclude there is no controlling precedent from the Texas Supreme Court nor persuasive authority from the state appellate courts that provides clear guidance on this issue. We consider this issue to involve significant state interests, and there are no practical difficulties presented by certifying this question to the Texas Supreme Court.

## QUESTION CERTIFIED

We certify the following question to the Texas Supreme Court:

Whether the termination for good cause provision of the Texas Dealers Act violates Article I, Section 16 of the Texas Constitution as applied to a contract terminable at will that was executed pre-enactment but terminated post-enactment.

6

No. 17-20527

We respectfully request the Texas Supreme Court provide its determination of this state-law issue, which will be binding on this court. We have no desire to have the Texas Supreme Court confine its reply to the precise form or scope of the question certified. As there are other issues raised in this case for which the answer to the certified question is relevant, this panel retains cognizance of the appeal in this case pending the response from the Texas Supreme Court.

QUESTION CERTIFIED.