# IN THE SUPREME COURT OF TEXAS

No. 14-0721

USAA TEXAS LLOYDS COMPANY, PETITIONER,

v.

GAIL MENCHACA, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

**Argued October 11, 2016**

JUSTICE BOYD delivered the opinion of the Court.

JUSTICE JOHNSON did not participate in the decision.

When this Court decides a case by announcing a rule of law, the decision serves as "binding precedent . . . when the very point is again presented in a subsequent suit between different parties." *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964). Yet as one of history's most renowned jurists once observed, "seldom will it happen that any one rule will exactly suit with many cases." 3 WILLIAM BLACKSTONE, COMMENTARIES *335 (1765). We have similarly acknowledged that "it is at best difficult to avoid some uncertainties in the law because of the varying facts attending the different cases." *Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 427 (Tex. 1946). When our decisions create such uncertainties, "it is our duty to settle the conflicts in order that the confusion will as nearly as possible be set at rest." *Id.*

Today we endeavor to fulfill that duty in this case involving an insured's claims against her insurance company. The primary issue is whether the insured can recover policy benefits based on jury findings that the insurer violated the Texas Insurance Code and that the violation resulted in the insured's loss of benefits the insurer "should have paid" under the policy, even though the jury also failed to find that the insurer failed to comply with its obligations under the policy. Unfortunately, our precedent in this area has led to substantial confusion among other courts, and that confusion has permeated this case. In resolving this appeal, we seek to clarify our precedent by announcing five rules that address the relationship between contract claims under an insurance policy and tort claims under the Insurance Code. Ultimately, because the trial court and the parties lacked the clarity we provide today, and because their shared confusion prevented a proper resolution of these claims, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial in the interest of justice.

## I.
### BACKGROUND

After Hurricane Ike struck Galveston Island in September 2008, Gail Menchaca contacted her homeowner's insurance company, USAA Texas Lloyds, and reported that the storm had damaged her home. USAA sent an adjuster to investigate Menchaca's claim, and the adjuster found only minimal damage. Based on the adjuster's findings, USAA determined that its policy covered some of the damage but declined to pay Menchaca any benefits because the total estimated repair costs did not exceed the policy's deductible.[1] About five months later, at Menchaca's

---

[1] The policy's declaration page provides that the policy covers "only that part of the loss over the deductible stated," and then lists the deductible amounts for "wind and hail" and for "all other perils."

2

request, USAA sent another adjuster to re-inspect the property. This adjuster generally confirmed the first adjuster's findings, and USAA again refused to pay any policy benefits. Menchaca sued USAA for breach of the insurance policy and for unfair settlement practices in violation of the Texas Insurance Code.[2] As damages for both claims, she sought only insurance benefits under the policy, plus court costs and attorney's fees.[3]

The parties tried the case to a jury. Question 1 of the jury charge, which addressed Menchaca's breach-of-contract claim, asked whether USAA failed "to comply with the terms of the insurance policy with respect to the claim for damages filed by Gail Menchaca resulting from Hurricane Ike." The jury answered "No." Question 2, which addressed Menchaca's statutory claims, asked whether USAA engaged in various unfair or deceptive practices, including whether USAA refused "to pay a claim without conducting a reasonable investigation with respect to" that claim. As to that specific practice, the jury answered "Yes."[4] Question 3 asked the jury to determine Menchaca's damages that resulted from either USAA's failure to comply with the policy

---

[2] Menchaca initially alleged a fraud claim, but it was not submitted to the jury. She also sued the first adjuster who inspected her property but later nonsuited those claims. Although the policy provided for an appraisal process to resolve disputes over the amount of covered losses, it appears that neither party ever invoked that alternative method for resolving this dispute. *See* --- S.W.3d at -- n.9.

[3] As damages for USAA's alleged breach of the insurance contract, Menchaca sought the "benefit of her bargain" under the policy, "which is the amount of her claim [for policy benefits], together with attorney fees." As damages for USAA's alleged statutory violations, she sought "actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs[,] and attorney's fees." She later disclaimed any mental anguish or consequential damages.

[4] Question 2 also separately asked whether USAA engaged in an unfair or deceptive act or practice by: "Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the liability under the insurance policy issued to Gail Menchaca had become reasonably clear;" "Failing to promptly provide to Gail Menchaca a reasonable explanation of the factual and legal basis in the policy for the denial of a claim(s);" "Failing to affirm or deny coverage within a reasonable time;" or "Misrepresenting to Gail Menchaca a material fact or policy provision relating to the coverage at issue." As to each of these specific practices, the jury answered "No."

3

or its statutory violations, calculated as "the difference, if any, between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid."[5] The jury answered "$11,350."[6]

Both parties moved for judgment in their favor based on the jury's verdict. USAA argued that because the jury failed to find in its answer to Question 1 that USAA failed to comply with the policy's terms, Menchaca could not recover for "bad faith or extra-contractual liability as a matter of law." Menchaca argued that the court should enter judgment in her favor based on the jury's answers to Questions 2 and 3, neither of which was conditioned on a "Yes" answer to Question 1. The trial court disregarded Question 1 and entered final judgment in Menchaca's favor based on the jury's answers to Questions 2 and 3. The court of appeals affirmed, — S.W.3d —,[7] and we granted USAA's petition for review.

## II.
### RECOVERING POLICY BENEFITS FOR STATUTORY VIOLATIONS

The parties agree that the damages the jury found in response to Question 3 represent the

---

[5] Specifically, Question 3 asked: "What sum of money . . . would fairly and reasonably compensate Gail Menchaca for her damages, if any, that resulted from the failure to comply you found in response to Question number 1 and/or that were caused by an unfair or deceptive act that you found in response to Question number 2[?]" The question thus required the jury to determine damages resulting from either a contract breach or a statutory violation or both. The charge instructed the jury to answer Question 3 only if it "answered 'Yes' to Question No. 1 *or* any part of Question No. 2 *or* both questions." The charge then instructed the jury that the "sum of money to be awarded is the difference, if any, between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid."

[6] The jury also found that Menchaca's reasonable and necessary attorney's fees "for representation in the trial court" totaled $130,000, and did not find that Menchaca failed to mitigate her damages or that USAA "knowingly" violated the Insurance Code.

[7] The court of appeals modified the judgment to delete an award of penalty interest and affirmed as modified. — S.W.3d —. Menchaca does not complain here about that aspect of the court's judgment.

4

amount of insurance policy benefits the jury concluded USAA "should have paid" to Menchaca. USAA contends that Menchaca cannot recover any amount of policy benefits because the jury failed to find that USAA breached its obligations under the policy. Although the jury did find that USAA violated the Insurance Code, USAA contends that Menchaca cannot recover policy benefits based on that finding alone.[8] USAA primarily relies on *Provident American Insurance Co. v. Castañeda*, in which we stated that an insurance company's "failure to properly investigate a claim is not a basis for obtaining policy benefits." 988 S.W.2d 189, 198 (Tex. 1998). Menchaca argues that the jury's findings that USAA violated the Code and that USAA "should have paid" Menchaca $11,350 sufficiently support the award of policy benefits. Menchaca primarily relies on *Vail v. Texas Farm Bureau Mutual Insurance Co.*, in which we stated that an insurer's "unfair refusal to

---

[8] Menchaca argues that USAA waived this argument because it (1) did not object that Question 2 was not predicated on a "yes" answer to Question 1; (2) did not request an instruction that the jury should answer "no" to Question 2 if they answered "no" to Question 1; (3) did not object to Question 2 on the ground that it imposed liability without a finding that Menchaca was entitled to benefits under the policy; and, (4) did not object to Question 3 on the ground that it permitted a recovery of policy benefits without a finding that Menchaca was entitled to benefits under the policy. USAA did object to Question 3, however, on the ground that the question impermissibly combined "contractual damages from Question 1 and statutory damages from Question 2, [because] Texas courts have held that extra[-]contractual damages need to be independent from policy damages." USAA complained that submitting just one damages question for all damages arising either under the policy or under the statute or both would make it "unclear potentially if we get 'yes' answers to [Questions] 1 and 2 what the damages are based on." We conclude that USAA's objections were sufficient to make clear its position that contractual damages are independent from statutory damages and must be based on a finding that USAA breached the policy. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (holding that an objection should make "the trial court aware of the complaint, timely and plainly"). We also conclude that USAA's argument raises a purely legal issue that does not affect the jury's role as fact-finder, and that USAA thus preserved the argument by asserting it as a ground for its motion for judgment based on the jury's verdict. *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 450 (Tex. 2004) (holding that when "the issue presented a pure legal question which did not affect the jury's role as fact finder, the post-verdict motion [can be] sufficient to preserve error"); *see also Felton v. Lovett*, 388 S.W.3d 656, 660 n.9 (Tex. 2012) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010); *Hoffmann–La Roche*, 144 S.W.3d at 450; *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999)) (holding that "a purely legal issue which does not affect the jury's role as fact-finder" may preserve error when "raised for the first time post-verdict"). Because USAA raises a purely legal argument that the jury's failure to find a contractual breach precludes Menchaca from recovering policy benefits as a matter of law, USAA preserved error by raising the argument in its motion for judgment.

5

pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." 754 S.W.2d 129, 136 (Tex. 1988).

Courts and commentators have expressed confusion over our decisions in this area, and over our statements in *Castañeda* and *Vail* in particular.[9] The United States Court of Appeals for the Fifth Circuit, for example, recently concluded that *Castañeda* and other "decisions from the Supreme Court of Texas and Texas's intermediate appellate courts arguably cast doubt on *Vail*'s continued vitality." *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015). In the *Deepwater Horizon* panel's view, the Fifth Circuit interpreted *Castañeda* "as setting out the opposite rule from that in *Vail*." *Id.* (citing *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs.*, 612 F.3d 800, 808 & n.1 (5th Cir. 2010)).[10] Today's case presents an opportunity to provide clarity regarding the relationship between claims for an insurance policy breach and Insurance Code violations. In light of the confusing nature of our precedent in this area, we begin by returning to the underlying governing principles. *See, e.g.*, *U.S. v. New Mexico*, 455 U.S. 720, 733 (1982) (concluding that "the confusing nature of our precedents counsels a return to the underlying constitutional principle").

---

[9] *See, e.g.*, Richard G. Wilson, *Policy Benefits—Are They Recoverable Under Extra-Contractual Theories When a Covered Claim is Denied?*, 12 J. TEX. INS. L. 17, 23 (2014) ("In some circumstances, it appears that courts have simply failed to follow the Texas Supreme Court precedent that is *Vail*."); Robert M. Hoffman & Jaclyn M. O'Sullivan, *What the Insurance Code Giveth, the Courts Cannot Taketh Away: Judicial Confusion Over Whether Insurance Proceeds Can be Trebled*, 11 J. TEX. INS. L. 23, 24 (2011) ("Unfortunately, it is easy to confuse the independent injury issue due to a line of cases that misapplied the 1998 Texas Supreme Court decision in . . . *Castañeda*.").

[10] In *Deepwater Horizon*, the Fifth Circuit certified to us the question of whether, "to maintain a cause of action under Chapter 541 of the Texas Insurance Code against an insurer that wrongfully withheld policy benefits, an insured must allege and prove an injury independent from the denied policy benefits?" 807 F.3d at 701. We accepted the certified question but later dismissed the cause as moot because the parties settled. *See id.*, *certified question accepted* (Dec. 4, 2015) *and dism'd as moot* (Apr. 8, 2016).

The first of these principles is that an "insurance policy is a contract" that sets forth the respective rights and obligations to which an insurer and its insured have mutually agreed. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015); *see also Tex. Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 131 (Tex. 2000) (noting that an "insurance policy . . . defines the parties' rights and obligations"). Generally, we construe a policy using the same rules that govern the construction of any other contract. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (citing *Forbau v. Aetna Life Ins., Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). An insurance policy, however, is a unique type of contract because an insurer generally "has exclusive control over the evaluation, processing[,] and denial of claims," and it can easily use that control to take advantage of its insured. *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Because of this inherent "unequal bargaining power," we concluded in *Arnold* that the "special relationship" between an insurer and insured justifies the imposition of a common-law duty on insurers to "deal fairly and in good faith with their insureds." *Id.*

Similar to that common-law duty, the Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits. *See, e.g.*, TEX. INS. CODE § 541.060(a) (prohibiting insurers from engaging in a variety of "unfair settlement practices"). The Code grants insureds a private action against insurers that engage in certain discriminatory, unfair, deceptive, or bad-faith practices, and it permits insureds to recover "actual damages . . . caused by" those practices, court costs, and attorney's fees, plus treble damages if the insurer "knowingly"

7

commits the prohibited act. *Id.* §§ 541.151, .152; *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 441 (Tex. 2012).[11] "Actual damages" under the Insurance Code "are those damages recoverable at common law," *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex. 1995) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980)), which include "benefit-of-the-bargain" damages representing "the difference between the value as represented and the value received," *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984)). But the Code does not create insurance coverage or a right to payment of benefits that does not otherwise exist under the policy. *See Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993) (discussing the necessity of distinguishing bad-faith issues from "the contract issue of coverage").

An insured's claim for breach of an insurance contract is "distinct" and "independent" from claims that the insurer violated its extra-contractual common-law and statutory duties. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) ("Insurance coverage claims and bad faith claims are by their nature independent."); *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995) (noting that a bad-faith claim is "distinct" from a suit for breach of the policy); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("[A] policy claim is independent of a bad faith claim."). A claim for breach of the policy is a "contract cause of action," while a

---

[11] Similarly, a claim for bad-faith conduct that breaches the common-law duty "can potentially result in three types of damages: (1) benefit of the bargain damages for an accompanying breach of contract claim, (2) compensatory damages for the tort of bad faith, and (3) punitive damages for intentional, malicious, fraudulent, or grossly negligent conduct." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994), *abrogated on other grounds by U-Haul Intl. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

8

common-law or statutory bad-faith claim "is a cause of action that sounds in tort." *Twin City*, 904 S.W.2d at 666; *see also Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) ("[A] breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract."). But the claims are often "largely interwoven," and the same evidence is often "admissible on both claims." *Akin*, 927 S.W.2d at 630.

The primary question in this case is whether an insured can recover policy benefits as actual damages caused by an insurer's statutory violation absent a finding that the insured had a contractual right to the benefits under the insurance policy. Generally, the answer to this question is "no," but the issue is complicated and involves several related questions. In an effort to clarify these issues, we distill from our decisions five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context. First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits. Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits. Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right. Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits.

9

And fifth, an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.

## A.     The General Rule

The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy. This rule derives from the fact that the Insurance Code only allows an insured to recover actual damages "caused by" the insurer's statutory violation. *See* TEX. INS. CODE § 541.151; *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 780 (Tex. 2006). We first announced this rule in *Stoker*, 903 S.W.2d at 341. The insurer in *Stoker* relied on an invalid reason to deny the insureds' claim for benefits but later asserted a valid basis for denying the claim. *See id.* at 339. The insureds sued the insurer for breach of contract and for bad-faith denial of the claim, seeking only policy benefits as damages. *Id.* at 339–40. The trial court granted summary judgment for the insurer on the breach-of-contract claim because the policy did not cover the claim. *Id.* at 339. The jury, however, found the insurer liable on the extra-contractual claims, and based on that finding, the trial court awarded policy benefits as "extra-contractual damages." *Id.* at 339–40. The court of appeals affirmed, but we reversed and rendered judgment for the insurer. We explained that as "a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Id.* at 341.[12]

---

[12] We cited the following non-Texas authorities in support of this general rule:

*O'Malley v. United States Fidelity & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985) (noting that no Mississippi case has ever allowed bad faith recovery for the insured without first establishing liability under the policy); *Gilbert v. Cong. Life Ins. Co.*, 646 So. 2d 592, 593 (Ala. 1994) (plaintiff bears the burden of proving a breach of contract by the defendant); *Reuter v. State Farm Mut. Auto.*

Some courts have read *Stoker* to hold that no claim for *any kind of* bad-faith conduct can exist if the policy does not cover the claim. But *Stoker* involved only a claim for bad-faith denial of the insureds' claim for benefits. We clarified this point the following year in *Akin*: "While *Stoker* held that a judgment for the insurer on the coverage claim prohibits recovery premised only on bad faith *denial of a claim*, it does not necessarily bar *all claims for bad faith*." 927 S.W.2d at 631 (citing *Stoker,* 903 S.W.2d at 342) (emphases added). Thus, a more accurate statement of the rule we announced in *Stoker* is that "there can be no claim for bad faith [denial of an insured's claim for policy benefits] when an insurer has promptly denied a claim that is in fact not covered." *Stoker*, 903 S.W.2d at 341.

Although *Stoker* involved only a bad-faith-denial claim, we have since applied its general rule to other types of extra-contractual violations. In doing so, we have confirmed that the rule is based on the principle that an insured who sues an insurer for statutory violations can only recover damages "caused by" those violations. In *Progressive County Mutual Insurance Co. v. Boyd*, for

---

*Ins. Co., Inc.,* 469 N.W.2d 250, 253 (Iowa 1991) ("[A] bad faith failure to pay the insured when the insured event occurs . . . may subject the insurer to tort liability"); *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (noting that in order to establish a tort action for bad faith the insured must first prove that the insurer was obligated to pay under the policy); *Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789, 858 P.2d 380, 382 (1993) ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 1000 (R.I. 1988) ("[T]here can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance."); *see also* OSTRAGER & NEWMAN, INSURANCE COVERAGE DISPUTES § 12.01 at 503 (7th ed. 1994) ("The determination of whether an insurer acted in bad faith generally requires as a predicate a determination that coverage exists for the loss in question."); 15A RHODES, COUCH ON INSURANCE LAW 2D § 58:1 at 249 (Rev. ed. 1983) ("As a general rule, there may be no extra-contractual recovery where the insured is not entitled to benefits under the contract of insurance which establishes the duties sought to be sued upon.").

*Stoker*, 903 S.W.2d at 341.

example, the insured alleged that the insurer breached the policy and violated the Code and its common-law duty by failing to promptly pay his claim, failing to fairly investigate the claim, and denying the claim in bad faith. 177 S.W.3d 919, 920, 922 (Tex. 2005) (per curiam). Because these extra-contractual claims were "predicated on [the] insurance policy and the accident being covered under the insurance policy," we held that the trial court's take-nothing judgment on the contract claim "negate[d]" the extra-contractual claims. *Id.* at 920–21. Specifically addressing the statutory prompt-payment claim, we explained that there "can be no liability [under the Code] if the insurance claim is not covered by the policy." *Id.* at 922. Similarly, in *Chrysler Insurance Co. v. Greenspoint Dodge of Houston, Inc.*, we quoted *Stoker*'s general rule and held that, because the insurer "did not breach the insurance contract, no basis supports" the insured's recovery of "punitive and extra-contractual damages." 297 S.W.3d 248, 253–54 (Tex. 2009) (per curiam). And in *State Farm Lloyds v. Page*, we said, "When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive," and there is "no liability under [the Insurance Code] if there is no coverage under the policy." 315 S.W.3d 525, 532 (Tex. 2010) (citing *Boyd*, 177 S.W.3d at 921). Most recently, in *JAW the Pointe, L.L.C. v. Lexington Insurance Co.*, we relied on *Stoker* for the proposition that when an insurance policy does not cover the insured's claim for benefits, "the insured cannot recover for the insurer's bad faith failure to effectuate a prompt and fair settlement of the claim." 460 S.W.3d 597, 599, 602 (Tex. 2015).

In the present case, the jury found that USAA violated the Code by denying the claim without conducting a reasonable investigation. *See* TEX. INS. CODE § 541.060(a)(7) (providing that an insurer that "refus[es] to pay a claim without conducting a reasonable investigation with respect

12

to the claim" commits an unfair settlement practice). In our early decisions, we mentioned this type of statutory violation but did not specifically address whether the general rule applies to such a claim. In *Stoker*, we expressly stated that the general rule should not "be understood as retreating from the established principles regarding the duty of an insurer to timely investigate its insureds' claims." 903 S.W.2d at 341. But we did not cite any authority for those "established principles." Instead, we merely noted, "These circumstances are not present in this case." *Id.*[13] That same year, we noted in *Twin City* that "some acts of bad faith, such as a *failure to properly investigate a claim* or an unjustifiable delay in processing a claim, do not *necessarily* relate to the insurer's breach of its contractual duties to pay covered claims, and may give rise to different damages." 904 S.W.2d at 666 n.3 (emphases added). The following year, we noted in *Akin* that the insured alleged that the insurer violated its statutory duties by failing to "properly investigate" the claim, 927 S.W.2d at 629, and we explained that the general rule "does not necessarily bar all claims for bad faith," *id.* at 631 (citing *Stoker*, 903 S.W.2d at 342), but we did not specifically address whether the general rule applies to an improper-investigation claim.

We did address something akin to an improper-investigation claim, however, in *Castañeda*. The insured in that case sued her insurer alleging statutory violations "arising out of the denial of her claim for benefits under a health insurance policy and the manner in which her claim was handled." 988 S.W.2d at 191. But she did not assert a claim for breach of contract or seek a finding that the policy covered her claim. *Id.* at 196, 201. Instead, she argued that she was entitled to

---

[13] At least one court of appeals has held that in *Stoker* we recognized an inadequate-investigation violation as an "exception" to the general rule. *See Toonen v. United Servs. Auto Ass'n*, 935 S.W.2d 937, 941–42 (Tex. App.—San Antonio 1996, no writ) (citing *Stoker*, 903 S.W.2d at 341). That holding misconstrues *Stoker*, as our subsequent decisions demonstrate.

13

recover damages "*equivalent* to policy benefits" based on the jury's finding that the insurer violated the statute by failing to acknowledge communications about the claim and by failing "to adopt reasonable standards for investigating claims." *Id.* at 198 (emphasis added). We found no evidence that the insurer violated the statute in either manner. *Id.* at 192. We also explained that, even if there had been evidence of a violation, a "failure to properly investigate a claim is not a basis for obtaining policy benefits." *Id.* at 198 (citing *Stoker*, 903 S.W.2d at 341). We ultimately rendered judgment for the insurer because "no support in the evidence for any of the extra-contractual claims" existed and because the insured "did not plead and did not obtain a determination [that the insurer] was liable for breach of the insurance contract." *Id.* at 201. We held similarly in *Boyd*, 177 S.W.3d at 922. Because the claim there was predicated on the accident being covered under the insurance policy, when the trial court granted a take-nothing judgment on the insured's breach-of-contract claim, the insured's failure-to-fairly-investigate claim failed as well. *Id.* at 920–21; *see also In re Allstate Cnty. Mut. Ins. Co.*, 447 S.W.3d 497, 501 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (citing *Boyd* for the proposition that an "insurer generally cannot be liable for failing to settle or investigate a claim that it has no contractual duty to pay").

Here, Menchaca contends that she can recover policy benefits as damages resulting from USAA's statutory violation because that claim is independent from her claim for policy breach. The court of appeals agreed, reasoning that the statute "imposes a duty on an insurer, above and beyond the duties established by the insurance policy itself, to conduct a reasonable investigation prior to denying a claim," and thus "USAA could have fully complied with the contract even if it

14

failed to reasonably investigate Menchaca's claim." — S.W.3d —. While we agree with the court's premise that USAA could have complied with the policy even if it failed to reasonably investigate the claim, we reject its conclusion just as we expressly rejected it in *Stoker*. Although we accepted the argument's premise that "a policy claim is independent of a bad faith claim," we found that the "asserted conclusion . . . does not necessarily follow," at least when the claim seeks benefits "not covered by the policy." *Id.* at 340–41.

The reason we reject Menchaca's independent-claims argument—indeed, the very reason for the general rule—derives from the fact that the Insurance Code only allows an insured to recover actual damages "caused by" the insurer's statutory violation. TEX. INS. CODE § 541.151. "Actual damages" are the common-law damages the insured sustains "as a result of" the statutory violation. *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex. 1985) (citing *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex. 1980)). If the insurer violates a statutory provision, that violation—at least generally[14]—cannot cause damages in the form of policy benefits that the insured has no right to receive under the policy. We acknowledged this reasoning in *Castañeda*, noting that the "concurring Justices in *Stoker* agreed that the manner in which a claim is investigated must be the proximate cause of damages before there could be a recovery." 988 S.W.2d at 198 (citing *Stoker*, 903 S.W.2d at 345 (Spector, J., concurring)).[15] We held that, in the absence of a finding that the

---

[14] We say "generally" here because in some cases the insurer's statutory violation may cause the policy to not cover the claim when, but for the statutory violation, the policy would cover the claim. *See, e.g.*, *JAW the Pointe*, 460 S.W.3d at 602. We discuss this situation further below.

[15] Justice Spector authored the concurrence in *Stoker*, joining the Court's judgment because she agreed that no evidence supported the claim that the insurer's "bad faith caused damages to the Stokers." *Stoker*, 903 S.W.2d at 342 (Spector, J., concurring). Notably, Justice Spector joined Justice Gonzalez's dissent in *Castañeda* in which Justice Gonzalez argued that *Stoker* does not apply when the policy covers the claim. *See Castañeda*, 988 S.W.2d at 203, 208 (Gonzalez, J., dissenting).

insurer had breached the policy, the insured could not recover any damages because none of the insurer's alleged statutory violations "was the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim." *Id.* Because the insured only sought damages that "flow[ed]" and "stemmed from the denial of benefits," *id.* at 198, 199, she could not recover anything because she "did not plead and did not obtain a determination [that the insurer] was liable for breach of the insurance contract." *Id.* at 201.[16]

Relying on these decisions, USAA contends that the general rule applies here and Menchaca cannot recover policy benefits based on a statutory violation because the jury failed to find that USAA "breached" the insurance contract. In response, Menchaca argues that she can avoid the general rule by obtaining a finding that the policy "covers" her losses, and she did not have to obtain a finding that USAA "breached" the policy to recover under the statute. Our precedent is confusing on this point because we have actually used both phrases to describe the general rule. *See, e.g.*, *JAW the Pointe*, 460 S.W.3d at 599 (holding that insured could not recover benefits as statutory damages because "the policy *did not cover* the insured's losses") (emphasis added); *Page*, 315 S.W.3d at 532 ("There can be no liability under [the Insurance Code] if there is *no coverage* under the policy.") (emphasis added); *Chrysler*, 297 S.W.3d at 254 (holding that insured could not recover extra-contractual damages because the insurer "*did not breach* the

---

[16] Although we did not explain the reason for the general rule in *Stoker*, we alluded to it by acknowledging "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would *cause* injury independent of the policy claim." *Stoker*, 903 S.W.2d at 341 (emphasis added). We made similar allusions to the causation requirement in *Boyd*, 177 S.W.3d at 920–21 (holding that insured could not recover benefits based on the insurer's improper investigation when the policy did not cover the claim for benefits because the improper-investigation claim was "predicated" on policy coverage), and in *Twin City*, 904 S.W.2d at 667 n.3 (noting that some bad-faith acts may "give rise" to damages other than policy benefits).

16

insurance contract") (emphasis added); *Boyd*, 177 S.W.3d at 920–21 (concluding that a take-nothing judgment on a breach-of-contract claim negated recovery of benefits as statutory damages); *Castañeda*, 988 S.W.2d at 201 (holding that insured could not recover statutory damages "equivalent to policy benefits" because she did not plead or establish that the insurer "was *liable for breach* of the insurance contract") (emphasis added); *Stoker*, 903 S.W.2d at 341 ("[T]here can be no claim for bad faith when an insurer has promptly denied a claim that is in fact *not covered*.") (emphasis added).

In one sense, no relevant distinction exists between "breach" and "coverage" in this context because no breach can occur unless coverage exists, and if there is coverage, there is necessarily a breach if the insurer fails to pay the amount covered. If the policy does not cover the insured's loss, the insurer does not breach the policy by failing to pay benefits for that loss, because the insured is not entitled to those benefits. Conversely, if the policy does cover the loss, the insurer necessarily breaches the policy if it fails to pay benefits for the loss because the insured is entitled to those benefits. In another sense, however, an important distinction does exist because USAA contends that Menchaca could not recover policy benefits unless she prevailed on her breach-of-contract claim. According to USAA, in other words, an insured can never recover policy benefits as damages for a statutory violation.

We disagree. Although our prior decisions refer interchangeably to both "breach" and "coverage," our focus in those cases was on whether the insured was entitled to benefits under the policy, because an insurer's statutory violation cannot "cause" the insured to suffer the loss of benefits unless the insured was entitled to those benefits. Thus, although we have referred to both

17

"breach" and "coverage," what matters for purposes of causation under the statute is whether the insured was entitled to receive benefits under the policy. While an insured cannot recover policy benefits for a statutory violation unless the jury finds that the insured had a right to the benefits under the policy, the insured does not *also* have to establish that the insurer breached the policy by refusing to pay those benefits. As we explain further in the following section, if the jury finds that the policy entitles the insured to receive the benefits and that the insurer's statutory violation caused the insured to not receive those benefits, the insured can recover the benefits as "actual damages . . . caused by" the statutory violation. *See* TEX. INS. CODE § 541.151.

Nevertheless, an insurer's obligation to pay policy benefits and the insured's right to receive them derive solely from the insurance policy's terms: "If the loss is covered, then the insurer is obligated to pay the claim according to the terms of the insurance contract." *Moriel,* 879 S.W.2d at 17. Because an insurer's statutory violation permits an insured to receive only those "actual damages" that are "caused by" the violation, we clarify and affirm the general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy.

## B. The Entitled-to-Benefits Rule

The second rule from our precedent is that an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as "actual damages" under the statute if the insurer's statutory violation causes the loss of the benefits. This rule, a logical corollary to the general rule, is what we recognized in *Vail*. The insureds in *Vail* sued their insurer for common-law bad faith and statutory violations (but not for breach of contract), alleging a "bad faith failure

18

to pay the claim" and seeking "the full amount" of policy benefits plus statutory damages. 754 S.W.2d at 130. The jury found that the insurer violated the statute by failing to "attempt[ ] in good faith to effectuate a prompt, fair, and equitable settlement" when "liability had become reasonably clear," and breached its common-law duty of good faith and fair dealing by failing "to exercise good faith in the investigation and processing of the claim." *Id.* at 134. Based on these findings, the trial court awarded benefits in the amount of the "full policy limit" plus treble that amount, attorney's fees, and prejudgment interest. *Id.* at 131.

The insurer argued that the insureds could not recover policy benefits as damages for statutory violations because "the amount due under the policy solely represents damages for breach of contract and does not constitute actual damages in relation to a claim of unfair claims settlement practices." *Id.* at 136. We rejected that argument and held that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Id.* We explained that the insureds "suffered a *loss* . . . for which they were entitled to make a claim under the insurance policy," and that loss was "transformed into a legal *damage*" when the insurer "wrongfully denied the claim." *Id.* "That damage," we held, "is, at minimum, the amount of policy proceeds wrongfully withheld by" the insurer. *Id.* Because the Insurance Code provides that the statutory remedies are cumulative of other remedies, we concluded that the insureds could elect to recover the benefits under the statute even though they also could have asserted a breach-of-contract claim. *Id.*

USAA contends, and some Texas courts have concluded, that we later rejected the *Vail* rule in *Castañeda* and *Stoker*, and thus an insured can never recover policy benefits as actual

19

damages for statutory or common-law bad-faith violations. *See, e.g.*, *Mai v. Farmers Tex. Cnty. Mut. Ins. Co.*, 2009 WL 1311848, at \*6 (Tex. App.—Houston [14th Dist.] May 7, 2009, pet. denied) (mem. op.) ("This position, that expected policy benefits can equate to bad faith damages, has been firmly rejected by the Texas Supreme Court."). The United States Court of Appeals for the Fifth Circuit reached the same conclusion in *Parkans International, LLC v. Zurich Insurance Co.*, holding that, in light of *Castañeda*, there "can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." 299 F.3d 514, 519 (5th Cir. 2002). The Fifth Circuit later relied on *Parkans* to reject an insured's argument that "it did not need to prove a separate injury in order to maintain its extra-contractual claims" because the insurer's "denial of insurance proceeds, standing alone, entitled it to recover on its extra-contractual claims." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 808 n.1 (5th Cir. 2010).[17]

We did not reject the *Vail* rule in *Stoker* or in *Castañeda*. While we could have made the point more clearly, the distinction between the cases is that the parties in *Vail* did not dispute the insured's entitlement to the policy benefits, and the only issue was whether the insured could recover those benefits as statutory damages. *Vail*, 754 S.W.2d at 136. The rule we announced in

---

[17] At least one federal district court expressly disagreed with *Great American*'s reading of *Castañeda*, but it ultimately concluded that it was compelled to follow the Fifth Circuit's precedent. *See In re Oil Spill by the Oil Rig Deepwater Horizon*, 2014 WL 5524268, at \*15 (E.D. La. Oct. 31, 2014) (disagreeing with insurer's argument that the insured could not recover policy benefits as actual damages under the statute because we "considered and rejected" that argument in *Vail*, but nevertheless concluding that it was required to follow *Great American*), *aff'd in part, question certified sub nom*, *Deepwater Horizon*, 807 F.3d at 689.

20

*Vail* was premised on the fact that the policy undisputedly covered the loss in that case, and the insurer therefore "*wrongfully* denied" a "*valid* claim." *Id.* at 136–37 (emphases added).[18] If an insurer's "wrongful" denial of a "valid" claim for benefits results from or constitutes a statutory violation, the resulting damages will necessarily include "at least the amount of the policy benefits wrongfully withheld." *Id.* at 136. We confirmed this reading of *Vail* and reaffirmed the general rule in *Twin City*, 904 S.W.2d at 666. There, we explained that "*Vail* was only concerned with the insurer's argument that policy benefits *improperly withheld* were not 'actual damages in relation to a claim of unfair claims settlement practices.'" *Id.* (emphasis added) (quoting *Vail*, 754 S.W.2d at 136). We further explained that the Court rejected the insurer's argument in *Vail* because "policy benefits *wrongfully withheld* were indeed actual damages" under the statute. *Id.* (emphasis added).

By contrast, in *Castañeda*, the insured did not establish and the insurer did not concede that the insured had a right to benefits under the policy. To the contrary, the insured "never sought and did not receive any contractual relief," *Castañeda*, 988 S.W.2d at 196, and never even alleged that the insurer "was liable for breach of the insurance contract," *id.* at 201. Instead, she sought only to recover damages "*equivalent* to policy benefits" based solely on her statutory claims that

_____

[18] Although four justices dissented in *Vail* in two separate opinions, none of them objected to the Court's opinion or judgment on the basis that the insureds failed to plead or obtain a finding that the insureds were entitled to receive benefits under the policy. Although the Court's majority opinion did not expressly explain the circumstances, it noted that the insureds "pleaded and proved" the amount of the policy's coverage and "offered evidence that [the insurer] had wrongfully denied the claim, resulting in a failure to pay [the policy benefits] when due." *Vail*, 754 S.W.2d at 137. The majority thus concluded that the insureds sustained the policy limits "as actual damages as a result of [the insurer's] unfair claims settlement practices." *Id.* JUSTICE GONZALEZ provided more clarity in his dissent, noting that the insurer "*admits* that it owes [the insured] the full amount of the policy" and thus "the sole issue on appeal is whether [the insured] is entitled to treble damages under the [statute]." *Id.* at 138 n.1 (GONZALEZ, J., dissenting) (emphasis added). Apparently, the Court's majority did not insist upon a jury finding of coverage or breach because the insurer admitted that the insured was entitled to the benefits. *Vail* should not be read, however, as suggesting that an insured can recover benefits for a statutory violation when the insured fails to establish and the insurer does not concede that the insured has a contractual right to the benefits.

21

the insurer failed to acknowledge communications about her claim and failed to "adopt reasonable standards for investigating claims." *Id.* at 198 (emphasis added). We expressly refused to provide any opinion on "whether there was contractual coverage." *Id.* at 196. We first addressed whether any evidence existed that the insurer violated the statute or its common-law duties, and in deciding that issue we concluded that, even *assuming* that there was coverage, the mere existence of coverage would not prove that the insurer violated the statute or its common-law duties by denying the claim. *Id.* at 196–97. We made no such assumption, however, when we later addressed the insured's separate argument regarding "the damages that might be recoverable if an insurer failed to adequately investigate a claim." *Id.* at 198. On that issue, we held that an insurer's "failure to properly investigate a claim is not a basis for obtaining policy benefits," but we did not assume that coverage existed when deciding that separate issue. *Id.* Instead, we relied on the fact that the insured "did not plead and did not obtain a determination [that the insurer] was liable for breach of the insurance contract." *Id.* at 198, 201.

In short, *Stoker* and *Castañeda* stand for the general rule that an insured cannot recover policy benefits as damages for an insurer's extra-contractual violation if the policy does not provide the insured a right to those benefits. *Vail* announced a corollary rule: an insured who establishes a right to benefits under the policy can recover those benefits as actual damages resulting from a statutory violation. We clarify and affirm both of these rules today.

## C.    The Benefits-Lost Rule

A third rule that our precedent recognizes is the rule that an insured can recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under

the policy, *if the insurer's conduct caused the insured to lose that contractual right*. We have recognized this principle in the context of claims alleging that an insurer misrepresented a policy's coverage, waived its right to deny coverage or is estopped from doing so, or committed a violation that caused the insured to lose a contractual right to benefits that it otherwise would have had. In each of these contexts, the insured can recover the benefits even though it has no contractual right to recover them because the benefits are actual damages "caused by" the insurer's statutory violation.

In the first context, we have recognized that an insurer that violates the statute by misrepresenting that its policy provides coverage that it does not in fact provide can be liable under the statute for such benefits if the insured is "adversely affected" or injured by its reliance on the misrepresentation. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694 (Tex. 1979).[19] Although the policy does not give the insured a contractual right to receive the benefits, the insurer's misrepresentation of the policy's coverage constitutes a statutory violation that causes actual damages in the amount of the benefits that the insured reasonably believed she was entitled to receive. *Id.* When, for example, a health insurer's agent represented that a policy "offered full coverage without qualification" for preexisting medical conditions, and the insured reasonably relied on that representation, the insured could recover the full coverage even though the policy

---

[19] *Royal Globe*, which was also a DTPA case, preceded the 1979 amendments to the DTPA that changed the causation standard from "adversely affected" to "producing cause." *See Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 835 (Tex. 2009) (explaining effect of the 1979 amendments).

23

actually limited such coverage to a specific maximum amount. *Kennedy v. Sale*, 689 S.W.2d 890, 891–92 (Tex. 1985); *see also Tapatio Springs Builders Inc. v. Md. Cas. Ins. Co.*, 82 F. Supp. 2d 633, 647 (W.D. Tex. 1999) ("A misrepresentation claim is independent, and may exist in the absence of coverage. To allege a misrepresentation claim under the DTPA, a plaintiff must plead a misrepresentation that caused actual damages.") (citing TEX. BUS. & COM. CODE § 17.5(a); *Castañeda*, 988 S.W.2d at 199–200); *In re Allstate Cnty. Mut. Ins. Co.*, 447 S.W.3d 497, 502 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) ("[M]isrepresentation claims . . . are not dependent upon a determination that [the insurer] has a contractual duty to pay . . . benefits to the [insureds], and will not be rendered moot if [the insurer] prevails on the breach of contract claim.") (citing TEX. BUS. & COM. CODE § 17.46(b)(5), (b)(12); TEX. INS. CODE § 541.061(3)–(5)).

The second context in which the benefits-lost rule might apply involves claims based on waiver and estoppel. We have explained that waiver and estoppel cannot be used to re-write a policy so that it provides coverage it did not originally provide. *Ulico*, 262 S.W.3d at 775. But if the insurer's statutory violations prejudice the insured, the insurer may be estopped "from denying benefits that would be payable under its policy as if the risk had been covered." *Id.* Under such circumstances, the insured may recover "any damages it sustains because of the insurer's actions," even though the policy does not cover the loss. *Id.* at 787.

Finally, the benefits-lost rule may apply when the insurer's statutory violation actually caused the policy not to cover losses that it otherwise would have covered. *See, e.g.*, *JAW the Pointe,* 460 S.W.3d at 602. The insured in *JAW the Pointe* sought policy benefits to cover its costs to demolish and rebuild an apartment complex that sustained significant damage from Hurricane

24

Ike. *See id.* at 599. The primary insurance policy covered three hundred otherwise unrelated apartment complexes but limited the total coverage to $25 million per occurrence. *Id.* When the insurer denied the insured's claim for some of the losses, the insured filed suit asserting claims for both breach of contract and statutory violations. *Id.* at 601. As the parties continued efforts to resolve their dispute, the insurer continued paying claims filed by the other covered apartment complexes until the insurer reached the policy's $25 million limit. *Id.* The insurer then filed for summary judgment on the insured's contract claim, arguing that it no longer had a contractual duty to cover the losses because it had paid the policy limits. *Id.* at 600. The insured did not oppose the motion and the trial court granted it, leaving only the statutory claims for trial. *Id.* A jury found that the insurer had violated the statute, and based on the statutory violations the trial court awarded the insured both actual damages in the form of the policy benefits and additional statutory damages based on the insurer's "bad faith" statutory violations. *Id.* at 601–02.

The insurer appealed, arguing that the insured could not recover policy benefits or statutory damages because the policy did not cover the insured's losses. *See id.* at 602. But instead of relying on the policy limits to defeat coverage, the insurer argued that the policy never covered the losses even before the insurer paid out the limits because a policy exclusion applied and negated any coverage. *See id.* We acknowledged that as "a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Id.* (quoting *Stoker,* 903 S.W.2d at 341) (internal quotation marks omitted). But we also noted that the insured argued that "the policy covered [the insured's losses] and [the insurer] should have paid those costs before it made other payments that exhausted the policy limits." *Id.* In other words, the insured argued that,

25

although it could no longer prevail on its breach-of-contract claim because the insurer had paid out its policy limits, the insurer's statutory violations caused the insured to lose its contractual right to the policy benefits by delaying the payments until after the limits had been reached. We accepted this argument, but ultimately concluded that the insured was never entitled to the policy benefits because the exclusion negated any coverage under the policy. Because the policy "excluded coverage for [the insured's] losses, [the insured] cannot recover against [the insurer] on its statutory bad-faith claims." *Id.* at 610. Put simply, an insurer that commits a statutory violation that eliminates or reduces its contractual obligations cannot then avail itself of the general rule.

### D.     The Independent-Injury Rule

The fourth rule from our precedent derives from the fact that an insurer's extra-contractual liability is "distinct" from its liability for benefits under the insurance policy. *See Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 214 (Tex. 1988), *overruled on other grounds by Ruttiger*, 381 S.W.3d at 441. In *Stoker*, after we announced the general rule that "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered," we explained that we were not excluding "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." 903 S.W.2d at 341 (citing *Aranda*, 748 S.W.2d at 214).

There are two aspects to this independent-injury rule. The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. *Id.* We recognized this in *Twin City*, explaining that some extra-contractual claims

26

may not "relate to the insurer's breach of contractual duties to pay covered claims" and may thus "give rise to different damages." 904 S.W.2d at 666 n.3. If such damages result from an independent injury "caused by" the insurer's statutory violation, the insured can recover those damages, just as insureds have always been able to recover "compensatory damages for the tort of bad faith" under the common law. *Moriel*, 879 S.W.2d at 17. Thus, an insured can recover actual damages caused by the insurer's bad-faith conduct if the damages "are separate from and . . . differ from benefits under the contract." *Twin City*, 904 S.W.2d at 666 (identifying mental anguish damages as an example). We reaffirmed this aspect of the independent-injury rule in *Castañeda*, recognizing that "there might be liability for damage to the insured other than policy benefits or damages flowing from the denial of the claim if the insured mishandled a claim." 988 S.W.2d at 198. We concluded that the insured could not recover anything in that case, however, because "none of the [insurer's] actions or inactions . . . was the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim." *Id.*

This aspect of the independent-injury rule applies, however, only if the damages are truly independent of the insured's right to receive policy benefits. It does not apply if the insured's statutory or extra-contractual claims "are predicated on [the loss] being covered under the insurance policy," *Boyd*, 177 S.W.3d at 920, or if the damages "flow" or "stem" from the denial of the claim for policy benefits, *see Castañeda*, 988 S.W.2d at 198–99. When an insured seeks to recover damages that "are predicated on," "flow from," or "stem from" policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits. *See Boyd*, 177 S.W.3d at 920–22 (concluding that insured's common-law conversion claim, common-

law bad-faith claim, and statutory claims were all "negated" because policy did not cover underlying losses and insured did "not allege that he suffered any damages unrelated to and independent of the policy claim"); *Castañeda*, 988 S.W.2d at 199 (holding that insured could not recover damages for loss of credit reputation because any such loss "stemmed from the denial of benefits" that were not owed under the policy).

The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits. Thus, we held in *Twin City* that an insured who prevails on a statutory claim cannot recover punitive damages for bad-faith conduct in the absence of independent actual damages arising from that conduct. 904 S.W.2d at 666; *see also Powell Elec. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, 2011 WL 3813278, at *9 (S.D. Tex. Aug. 29, 2011) (granting summary judgment for the insured on its breach-of-contract claim but for the insurer on common-law and statutory bad-faith claims because the insured "failed to allege damage independent of the damages arising from the underlying breach of the insurance contract").

Our reference in *Stoker* to "the possibility" that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and we in fact have yet to encounter one. *See, e.g.*, *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521–22 (5th Cir. 2013) ("The *Stoker* language has frequently been discussed, but in seventeen years since the decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim . . . ."). This is likely because the Insurance Code offers procedural protections against misconduct likely to lead to an improper

denial of benefits and little else. *See, e.g.*, TEX. INS. CODE § 541.060 (prohibiting an insurer from "requiring a claimant as a condition of settling a claim to produce the claimant's federal income tax returns"). We have further limited the natural range of injury by insisting that an "independent injury" may not "flow" or "stem" from denial of policy benefits. *See Castañeda*, 988 S.W.2d at 198. Today, although we reiterate our statement in *Stoker* that such a claim could exist, we have no occasion to speculate what would constitute a recoverable independent injury.

## E. The No-Recovery Rule

The fifth and final rule is simply the natural corollary to the first four rules: An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits. *Castañeda*, 988 S.W.2d at 198; *see also Lundstrom v. United Servs. Auto. Ass'n–CIC*, 192 S.W.3d 78, 96 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (rendering judgment for insurer because policy did not cover claim and insureds "have not alleged any act so extreme as to cause an injury independent of [the insurer's] denial of their policy claim"); *Bailey v. Progressive Cnty. Mut. Ins. Co.*, 2004 WL 1193917, at *1 (Tex. App.—Dallas June 1, 2004, no pet.) (mem. op., not designated for publication) (rendering judgment against insureds because policy did not cover claim and insureds demonstrated no "independent injury arising from" statutory violations); *see also Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 79 (5th Cir. 2015) (per curiam) (citing *Boyd*, 177 S.W.3d at 922) (affirming summary judgment for insurer on all claims because no coverage or breach and insured put forth no evidence of "extreme conduct or of damages suffered independent of those that would have resulted from an alleged wrongful denial of his claim").

29

**F.      Summary**

We clarify today that an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits. An insured who establishes a right to receive benefits under the policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits. And an insured can recover benefits as actual damages under the Insurance Code even if the insured has no contractual right to those benefits if the insurer's conduct caused the insured to lose that right. If an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the insured is not entitled to receive benefits under the policy. But if the policy does entitle the insured to benefits, the insurer's statutory violation does not permit the insured to recover any actual damages beyond those policy benefits unless the violation causes an injury that is independent from the loss of the benefits. Finally, an insured cannot recover any damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.

### III.
#### MENCHACA'S CLAIMS AGAINST USAA

Having clarified the governing rules, we now turn to the case before us. As explained above, the jury in this case (1) failed to find that USAA failed to comply with its obligations under the insurance policy; (2) found that USAA violated the Insurance Code by failing to reasonably investigate Menchaca's claim for policy benefits; and (3) found that USAA's statutory violation resulted in damages of $11,350, representing the amount of policy benefits USAA "should have

30

paid" Menchaca. Ever since the jury returned its verdict, the parties have disputed the effect of these findings. Relying on the jury's answer to Question 1 and on its misunderstanding of the general rule, USAA contends that Menchaca cannot recover any policy benefits because the jury failed to find that USAA "breached" its obligations under the policy. Relying on the jury's answers to Questions 2 and 3 and on her misunderstanding of *Vail*'s holding that damages under the Insurance Code were "at minimum, the amount of policy proceeds wrongfully withheld," 754 S.W.2d at 136, Menchaca contends that she can recover the policy benefits because the jury found that USAA violated the statute and the violation caused damages in the form of policy benefits USAA "should have paid" to Menchaca.

The trial court resolved the parties' dispute by disregarding the jury's answer to Question 1, and USAA argues that the court erred by doing so. We agree. As a result, we are left to decide the effect of the jury's answers based on arguments the parties have made without the benefit of the clarifications we have provided today. Under these circumstances, and because we have found it necessary to clarify the confusion resulting from our decisions, we conclude that it is proper to remand the case for a new trial in the interest of justice.

A.      **Disregarding Question 1**

After the jury returned its verdict, both parties accepted it without objection, and the trial court dismissed the jury. Both parties then filed motions for judgment in their favor based on the jury's verdict. Relying primarily on *Stoker* and *Castañeda*, USAA argued that Menchaca could not recover any damages based on the jury's finding of a statutory violation because the jury failed to find that USAA had "breached" the policy in answer to Question 1. Relying primarily on *Vail*

31

and on the jury's answers to Questions 2 and 3, Menchaca argued that she could recover the amount

of policy benefits the jury found because "the jury found there was coverage," even if she failed

to find that USAA breached the contract. Although neither party argued that the jury's answers

created a conflict, the trial court believed they did. Instead of considering how to address and

resolve the conflict, however, the court decided to disregard Question 1 because it found the

question to be "poorly worded" and "incomprehensible." Specifically, the court explained that

Question 1:

> says, "Breach of contract," but it doesn't say what kind of breach.[20] It doesn't even
> explain breach of contract. It doesn't even give a definition for breach of contract.
> There's all kinds of other things that should have been put in there about what's
> material breach, definition of material breach. The question fails altogether. It
> shouldn't have been submitted in the first place. If you remember correctly, I didn't
> want that question submitted. But it was insisted upon by the plaintiffs, so they've
> got to reap what they sow. But I think that I can easily ignore question number one
> as being incomprehensible to a layman and that it has no effect. I can go with what
> I wanted to go with in the first place which was question number two, damage
> question, then attorney's fees. That's what I'm going to do. I'm going to ignore
> question number one entirely because I think it was poorly worded.

The court of appeals affirmed the trial court's decision to disregard Question 1, but for

different reasons. First, the court concluded that it was impossible to know why the jury answered

"No" to the question. *See* — S.W.3d at —.  In the court's view, the jury could have answered "No"

because it mistakenly believed that USAA could only "fail to comply with the terms of the

insurance policy" if it failed to pay the amount that USAA *subjectively* believed it had to pay. *See*

*id.* Second, it concluded that the jury's "No" answer to Question 1 did not "definitively establish

---

[20] We note that in fact Question 1 did not say "breach of contract" or ask whether there was a "breach of contract," and neither did any other question. Instead, Question 1 asked whether USAA "failed to comply" with the policy.

that there was no coverage," because USAA agreed that the policy provided coverage for Menchaca's losses and instead only contended that the amount of the losses did not exceed the policy's deductible. *See id.* Finally, the court concluded that the jury's finding in answer to Question 2 that USAA violated the statute rendered its answer to Question 1 immaterial because Question 3 "instructed the jury to award the same damages regardless of which theory of liability was adopted." *See id.*

We conclude that the trial court erred by disregarding the jury's answer to Question 1. "A trial court may disregard a jury finding only if it is unsupported by evidence . . . or if the issue is immaterial." *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (citing *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966)). Contrary to the court of appeals' conclusion, the fact that the court cannot determine the reasons for a jury's answer does not permit the court to disregard that answer. Here, the jury's answer to Question 1 was neither unsupported by the evidence nor immaterial.

First, in light of USAA's evidence that Menchaca's damages were less than the amount of her deductible, at least some evidence supported the jury's finding that USAA did not fail to comply with its obligations under the policy. Although USAA did not dispute that the policy provided "coverage" for some of Menchaca's damages, it provided evidence that the amount of her loss was less than the policy's deductible, and that evidence supports the jury's failure to find that USAA "failed to comply" with its obligations under the policy.[21]

---

[21] We do not agree with the court of appeals' reliance on the fact that USAA conceded that the policy "covered" some of Menchaca's losses. While USAA did in fact concede that point, it contested Menchaca's claim that her covered losses exceeded the amount of her deductible. By contending that Menchaca's covered losses did not

33

Second, Question 1 was not immaterial. A jury finding is immaterial when the question "should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings." *Spencer*, 876 S.W.2d at 157 (citing *C. & R. Transp.*, 406 S.W.2d at 194). Contrary to the trial court's conclusion, the fact that a question is defective does not render the jury's answer immaterial. *See id.* (concluding that, "while [a question] was defective, it was not immaterial."). Question 1 was material because Menchaca sued USAA for breach of the insurance policy as well as for statutory violations, and she sought to recover on either claim. The jury's answers to Questions 2 and 3 did not render its "No" answer to Question 1 immaterial because that answer was necessary to resolve Menchaca's breach-of-contract claim. We therefore conclude that the court of appeals erred by affirming the trial court's decision to disregard the jury's answer to Question 1.

## B. Reversal and Remand in the Interest of Justice

Having concluded that the trial court and court of appeals erred in disregarding the jury's answer to Question 1, we will reverse the judgment in Menchaca's favor. In the interest of justice, however, we may "remand the case to the trial court even if a rendition of judgment is otherwise appropriate." TEX. R. APP. P. 60.3. Such a remand is particularly appropriate when it appears that one or more parties "proceeded under the wrong legal theory," *Boyles v. Kerr*, 855 S.W.2d 593, 603 (Tex. 1993), especially when "the applicable law has . . . evolved between the time of trial and the disposition of the appeal." *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 162 (Tex. 2012); *see also Hamrick v. Ward*, 446 S.W.3d 377, 385 (Tex. 2014) (remanding in the

---

exceed the amount of her deductible, USAA disputed that the policy "covered" the benefits for which she sued because the policy expressly provided that USAA would "cover only that part of the loss over the deductible stated."

interest of justice "in light of our clarification of the law"); *Moriel*, 879 S.W.2d at 26 (same, in light of our "substantial clarification"). In light of the parties' obvious and understandable confusion over our relevant precedent and the effect of that confusion on their arguments in this case, we conclude that a remand is necessary here in the interest of justice.

Specifically, USAA has steadfastly maintained that Menchaca cannot recover policy benefits for a statutory violation unless she also obtains a finding that USAA "breached" the insurance policy or that USAA's statutory violation caused an injury independent of her right to benefits. At trial, USAA objected to the charge's failure to condition Question 2 on a "Yes" finding to Question 1 and objected to the submission of Question 3 on the ground that "Texas courts have held that extra[-]contractual damages need to be independent from policy damages." After the jury returned its verdict, USAA argued that it should prevail because "the jury found 'NO' breach of contract" and awarded only policy benefits "for repairs to the property which Plaintiff and her experts testified were proximately caused by Hurricane Ike." After the trial court entered its judgment, USAA argued in its motion for new trial that Menchaca cannot recover in the absence of a finding of breach because she did not seek damages "separate and apart from those sought under the breach of contract theory." Although we have clarified today that Menchaca did not have to prevail on her breach-of-contract claim to recover policy benefits for a statutory violation, the confusing nature of our precedent precludes us from faulting USAA for the position it has maintained throughout this litigation.

Meanwhile, Menchaca has consistently argued that she can recover, even in the absence of a finding of "breach," based on the jury's findings in answer to Questions 2 and 3 that USAA

35

violated the statute and that the violation "caused" Menchaca to incur damages in the form of policy benefits that USAA "should have paid." In support of its motion for judgment on the verdict, Menchaca argued that through these answers "the jury found there was coverage," and that finding supported the judgment even though the jury failed to find a "material breach." Before us, Menchaca argues that the jury "did not find that [she] suffered no covered losses or that USAA paid for all Menchaca's covered losses," but in fact "found the contrary" in response to Question 3, "finding that USAA failed to pay $11,350 it should have paid (and would have paid but for its unreasonable investigation) in accordance with the policy." As with USAA's arguments, we conclude that the confusing nature of our precedent precludes us from faulting Menchaca for asserting throughout this litigation that she did not have to prove breach.

In their briefing to this Court, the parties make additional arguments regarding such issues as whether USAA adequately objected to the jury charge; whether the jury's answer to Question 1 established that Menchaca was not entitled to any benefits under the policy; whether the answer to Question 2 established that USAA breached the policy; whether the answer to Question 3 established that the policy entitled Menchaca to receive $11,350 in benefits; whether the jury's answers irreconcilably conflict; and if so, whether and how we can resolve that conflict. We conclude that the parties' confusion about our precedent has affected these arguments as well, to such an extent that justice requires that we remand the case for a new trial without addressing them.

## IV.
### CONCLUSION

The trial court erred by disregarding the jury's answer to Question 1, and the court of appeals erred by affirming the trial court's judgment. In light of the confusion that our precedent caused in the litigation and appeal of this case, we reverse the court of appeals' judgment and remand this case in the interest of justice for a new trial consistent with the rules we have clarified today.

_____
Jeffrey S. Boyd
Justice

Opinion delivered:  April 7, 2017